SHULL v. NEW BIRDSALL CO.

1. Plaintiff ordered a threshing outfit of defendant to be paid for "at the time and place of delivery," in part by a second hand outfit, and balance with notes. The order also provided that it was taken subject to the approval of defendant, and that no agent could bind defendant by any agreement preliminary to, collateral with, or additional to the contract as set out, or waive any condition thereof. The next day after giving the order to defendant's agents, and ten days before it was approved, plaintiff delivered the second hand outfit to such agents, who immediately sold it. Owing to delay in shipment,

plaintiff countermanded his order, and sued to recover the old outfit or its value. *Held*, that the delivery of the old outfit to defendant's agents before the new outfit was delivered was a delivery to them personally, for which defendant was not responsible, since they had no actual or ostensible authority to receive it for defendant prior to the time stated in the order.

2.  Where plaintiff ordered a threshing outfit of defendant, to be paid for, at the time of delivery, in part by an old outfit, and balance in notes, and, before the order was accepted, delivered the old outfit to defendant's agents, and one of the agents testified that defendant knew such machinery was traded in at the time the order was taken, or immediately after, and defendant's secretary testified that they did not know the machinery had been delivered when the order was accepted, the question of defendant's ratification of its agents' acts in receiving the machinery was for the jury.

3.  Where plaintiff ordered a threshing outfit of defendant, "to be delivered at once," and defendant, on accepting the order, manufactured some special parts not on hand, and shipped the machine as soon as possible, but, owing to a subsequent misunderstanding, sent the machine elsewhere, and a few days later shipped a machine to plaintiff, which he refused to accept, the question whether the defendant used reasonable diligence in shipping the machine was for the jury, since the order to deliver at once, no date being fixed, simply required reasonable diligence on the part of defendant.

(Opinion filed June 12, 1901.)

Appeal from circiut court, Codington county. Hon. A. W. CAMPBELL, Judge.

Action by Robert Shull against the New Birdsall Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

The facts are stated in the opinion.

*George W. Case,* for appellant.

A well established rule of law is: "Agencies cannot be established by the admission or statements of an agent." This rule is abundantly sustained by various courts, and especially by the courts

of North and South Dakota. Gorden v. Vt. Loan and Trust Co., 71 N. W. 556; Plano Co., v. Root, 54 N. W. 924; Loverin Brown Co. 1. Bank of Buffalo, 75 N. W. 923; La Rue v. St. Anthony & D. Elevator Co., 3 S. D. 637.

A traveling salesman or agent merely to solicit orders for goods has no implied authority to receive payment therefor. Clark v. Smith, 88 Ill. 298; Clough v. Whitcomb, 105 Mass. 482; Korneman v. Monaghan, 24 Mich. 36; Janney v. Boyd, 30 Minn. 319; Kohn v. Washer (Tex.) 53 Am. Rep. 745.

When the agent has not the possession of the goods and no other indicia of authority, and is only authorized to sell, the purchaser pays the agent at his peril, and it devolves upon him to show that the agent was authorized to receive payment. Kane v. Barstow, 16 Am. Rep. 490; Simon v. Johnson, 101 Ala. 368; Butler v. Dorman, 30 Am. Rep. 795; Higgins v. Moore, 34 N. Y. 417; Crosby v. Hill, 39 Ohio St. 100; Comp. Laws 3966, 3977.

Knowledge of all material facts and circumstances is an essential element to an effective ratification; without such knowledge the adoption of the acts of an authorized agent, or one who has exceed his authority, will not bind the principal; but on the contrary if he has given his assent while in ignorance of the facts of the case, he may on being informed, disavow the unauthorized transaction. Dean v. Bassett, 57 Cal.640; Miller v. Board of Education, 44 Cal. 166; Hurley v. Watson, 36 N. W. 726; Dodge v. McDonnell, 14 Wis. 600; The Aetna Ins. Co. v. Northwestern Iron Co., 21 Wis. 465; Humphrey v. Havens, 14 Minn. 298; Hunt v. Pitts Ag. Works, 72 N. W. 813; Moyle v. Cong. Society, 50 Pac. 806; O'Shay v. Rice, 67 N. W. 308; Crain v. Sickel, 71 N. W. 724.

*John B. Hanton* and *M. E. Sheldon,* for respondent.

Ten days time should be held not to be at once for shipping

a threshing machine ordered immediately before the operating season. Rommel v. Wingate, 103 Mass. 327. That the principal is bound by constructive notice as fully as by actual notice and as to what will constitute constructive notice may be said to be that wherever a party has knowledge of any fact sufficient to put a prudent man upon an inquiry, which if prosecuted with ordinary diligence, would lead to actual notice, he will be charged with the knowledge. Mechem on Agencies, Sec. 724.

CORSON, J. This was an action by the plaintiff to recover of the defendant the value of a second hand threshing rig claimed to have been delivered by the plaintiff to the defendant, and damages for the failure to deliver a new rig ordered by the plaintiff. Verdict was directed for the plaintiff, and the defendant appeals.

The defendant is a corporation doing business at Auburn, in the state of New York. The plaintiff is a resident of Codington county, in this state. On the 25th of July, 1898, the plaintiff ordered from the defendant, through its agent in the city of Watertown, (Hess & Rau) one Birdsall engine and complete threshing rig, "to be delivered at once," in consideration of the payment of the sum of $3,000 at the time and place of delivery, as follows: Cash by the delivery of one Advance engine and separator, $1,400; one note due November 1, 1898, $750; one note due same date, $250; one note due November 1, 1899, $600, drawing interest at 7 per cent. from the date of the delivery of the machine—together with the freight charges for shipping said machine from the factory to the place of delivery. This order was made upon a printed blank in which it was distinctly stated, "This order taken subject to the approval of the New Birdsall Company, Auburn, N. Y." It was further stated in the order, "It is expressly understood that no agent

has any power whatever to bind the New Birdsall Company by any agreement preliminary to, collateral with, or additional to the contract herein set out, or to waive any of the conditions of this agreement." This order was received by the secretary of the company on July 29, and accepted August 5, 1898. The order was taken by Hess & Rau, who were authorized to solicit and forward orders for the machinery of the defendant. On the day following the execution of the order the secondhand machinery mentioned in the order was delivered to Hess & Rau by the plaintiff, and thereupon, and before said order had reached the company at Auburn, N. Y., or been accepted by the company, Hess & Rau disposed of the same, and received the compensation therefor. For certain reasons hereinafter referred to, the machinery did not reach Watertown until on or about the 2d day of September. On the 15th day of August, the plaintiff wrote a letter to the company, addressed to it at Auburn, N. Y., notifying it that he would hold it for damages for the delay. On the day this letter was dated the defendant had shipped this machinery to the plaintiff but upon receipt of the letter referred to, directed that the machinery be delivered to other parties. On August 20th the company received the following telegram from Hess & Rau: "Wire received. Schull here waiting for new rig. He turned old toward Birdsall. We have sold and delivered old rig. Cannot cancel. When and what have you shipped? Answer." Under this authority the company immediately got out another rig for the plaintiff, and shipped the same on the 24th to Hess & Rau to fill the order. That machinery, as we have seen, did not arrive until September 2d, when the plaintiff refused to receive it. So far as the evidence discloses, the consideration for the second hand machinery received by Hess & Rau was never turned over to or accounted for to the company. The principal questions, therefore,

presented by this case are: Were Hess & Rau authorized to receive the second hand machinery from the plaintiff before the order was accepted by the company and the new machinery delivered to him? And, second, within what time was the company required to deliver the machine ordered by the plaintiff?

It is contended on the part of the appellant that Hess & Rau, its agents, were simply agents to solicit purchasers for the appellant's threshing machinery, and for no other purpose, and that they were not authorized to receive the second hand machinery from the plaintiff until the new machinery arrived and was ready to be delivered to him in any event, and that the plaintiff, having delivered the machinery to the agents before the order was accepted and the machinery delivered by the defendant, must look to them for reimbursement, and not to the defendant. A copy of the order was delivered to the plaintiff, and hence he was advised that the order was taken subject to the approval of the company at its home office in New York. He was further advised, as we have seen, that the agents had no authority to bind the defendant company "by any agreement preliminary to, collateral with, or additional to the contract," set out in the order. We are of the opinion, therefore, that when the plaintiff delivered the second hand machinery to the agents, Hess & Rau, before the order was accepted, and before the new machinery was ready to be delivered to him, he did so at his own risk, and, the new machinery not being delivered to him, he has no claim upon the defendant for the value of such second hand machinery. The plaintiff by his agreement contracted to deliver to the defendant the second hand machinery at the time and place when the new machinery should be ready to be delivered to him. He was not authorized to turn it over to the agents until his order should be accepted by the defendant, and the new machinery forwarded to

him, and ready for delivery at Watertown. The Compiled Laws of this state provide: "An agent has such authority as the principal, actually or ostensibly confers upon him." Section 3977. "Actual authority is such as a principal intentionally confers upon the agent, or intentionally or by want of ordinary care, allows the agent to believe himself to possess." Section 3978. "Ostensible authority is such as a principal intentionally, or by want of ordinary care, causes or allows a third person to believe the agent to possess." Section 3979. "Every agent has actually such authority as is defined by this title, unless specially deprived thereof by his principal, and has even then such authority ostensibly, except as to persons who have actual or constructive notice of the restriction upon his authority." Section 3980. "A general agent to sell, who is intrusted by the principal with the possession of the thing sold, has authority to receive the price." Section 3987. "A special agent to sell has authority to receive the price on deliverey of the thing sold, but not afterwards." Section 3988. The employment of agents to solicit orders for farm machinery, which orders must be approved by the company manufacturing the machinery before they can become effectual for any purpose, does not give such agents the authority to contract for and receive second hand machinery in payment for the new machinery ordered, prior to the acceptance of the order and the time for delivering the new machinery. There is nothing in their position as such soliciting agent that would authorize a person dealing with the company through them to believe that they possess any such authority, and it cannot be said in this case that the agents had ostensible authority to enter into such a contract. The author of the article on Agency in I Am. & Eng. Enc. Law (2nd. Ed.) 987, in speaking of an agent's authority, uses the following language: "Third parties dealing with an agent are put upon their

guard by the very fact, and do so at their own risk. They cannot rely upon the agent's assumption of authority, but are to be regarded as dealing with the power before them, and must, at their peril, observe that the act done by the agent is legally identical with the act authorized by the power." The same author, on pages 1014 and 1015, says: "But when the agent has not the possession of the goods and no other indicia of authority, and is only authorized to sell, the purchaser pays the agent at his peril, and it devolves upon him to show that the agent was authorized to receive payment." McKindly v. Dunham, 55 Wis. 515, 13 N. W. 485, 42 Am. Rep. 740. The burden in this case was upon the plaintiff to show that Hess & Rau, the agents, were authorized to receive this secondhand machinery in advance of the time of the delivery of the new machinery, and the record discloses no such evidence. The contract between Hess & Rau and the defendant company was in writing, and it nowhere appears from said contract that they had any such authority; and Mr. Mosher, the secretary of the company, in his evidence states that they were not authorized to receive second hand machinery in payment for new machinery to be delivered by the company. Their assumption, therefore, of such authority was not binding upon the company; and, as we have before stated, the plaintiff in delivering his second hand machinery to them in advance of the acceptance or his order and the delivery of the new machinery, acted at his own risk. The learned court upon the trial of the case seems to have proceeded upon the theory that, as Hess & Rau assumed to make this agreement, the company was therefore bound by the same, and their declarations and acts were received in evidence for the purpose of binding the company. In this the court was clearly in error. It should have required of the plaintiff proof that Hess & Rau were authorized to accept this machinery and dispose of it before the ac-

ceptance of the plaintiff's order and the delivery of the new machinery. In the absence of such evidence, the plaintiff was not entitled to recover in his action for the value of his second hand machinery unless the act of the agents was ratified by the defendant with full knowledge of all the facts.

It is contended, however, on the part of the respondent that the company ratified the act of the agents, but we are of the opinion that this position is not tenable. It is true that the company were notified by the terms of the order that certain second hand machinery was to be received in payment for the new to the extent of $1,400, and that before accepting the order the company wrote the following letter to Hess & Rau, their agents at Watertown : "Auburn, N. Y., July 29th, 1898. Messrs. Hess & Rau, Watertown, S. D.—Gentlemen : We are in receipt of an order, through Mr. Dallman, from Robert Schull, for 18-horse traction and 40x60 separator, with wind stacker, etc., in which there is an Advance engine and separator taken in exchange at $1,400. We are informed by Mr. Dallman that you take this engine and separator and pay the difference between that and your commission. Will you please confirm this statement, and advise us when you expect to make settlement for this,—in other words, just what your understanding is in regard to it—that we may have it fully understood before entering the order? Yours truly, The New Birdsall Co., F. B. Mosher, secretary." It does not appear, however, from the evidence in this case that at the time this letter was written the company had any knowledge whatever that the second hand machinery had been delivered to their agents at Watertown, or that it was to be delivered prior to the receipt at Watertown of the new machinery. In fact, it affirmatively appears from the evidence of the secretary that the company had no such knowledge. It is well-settled law, that an act

of an agent is not ratified by the principal unless the principal is fully advised of all the facts relating thereto, or intentionally, voluntarily ratifies it without such information. The company, in view of the fact that a large proportion of the $1,400 would go to the agents as commission in case of the sale and deliverey of the new machinery, might very properly be willing to assume the risk of the balance due on the second hand machinery in case the new machinery should be accepted by the plaintiff. But certainly the letter is not a ratification of the acceptance and sale of the second hand machinery by its agents before the company had in fact accepted the order, and the new machinery had been accepted by the plaintiff. The rule is laid down in 1 Am. & Eng. Enc. Law (2nd Ed.) 1189, as follows: "Knowledge of all material facts and circumstances is an essential element to an affective ratification. Without such knowledge the adoption of the acts of an authorized agent, or one who has exceeded his authority, will not bind the principal; but, on the contrary, if he has given his assent while in ignorance of the facts of the case, he may, on being informed disavow the unauthorized transaction." Ætna Ins. Co. v. Northwestern Iron Co., 21 Wis. 465; Dodge v. McDonnell, 14 Wis. 553; Dean v. Bassett, 57 Cal. 640; Hurley v. Watson, 68 Mich. 531, 36 N. W. 726; Moyle v. Society, 16 Utah, 69, 50 Pac. 806.

It is insisted on the part of the respondent that the plaintiff proved that the company had knowledge that the second hand machinery had been received by Hess & Rau at the time they accepted the order, and he bases this contention upon the following question to the witness Hess, and his answer to the same: "You may state if the company knew that this machinery had been traded in at the time this order was taken or immediately after. A. Yes, sir," What is meant by that part of the question, "traded in" is difficult to

comprehend. Our construction is that it means just what was contained in the order—that it should be in part payment for the new machinery. The question and answer are too indefinite upon which to base the statement that the company had knowledge at the time they accepted the order that the second hand machinery had been actually delivered to the agents and disposed of by them. But, in any event, as the secretary of the defendant has stated that the company had no such knowledge or notice, the question, if a controverted one, should have been left to the jury.

This brings us to the second question, viz., was the plaintiff entitled to damages, as matter of law? As we have seen the order in this case was executed on the 25th day of July, and appears to have been accepted by the defendant on the 5th day of August, and the machinery shipped on the 15th day of August. It appears from the evidence in the case that some special parts of the machinery were not on hand at the time the order was received, and the defendant immediately proceeded to manufacture the parts, and shipped the same at the earliest day possible after the acceptance of the order. Whether or not the defendant had proceeded with due diligence, and shipped the machinery within a reasonable time after the order was given, was a question for the jury. It appears, as before stated, that on the same day the machinery was shipped from Auburn the plaintiff wrote the letter claiming damages for the delay, and the company thereupon directed the machinery to be delivered to other parties, treating the letter as canceling the order. It further appears from the evidence that by reason of the telegram received from Hess & Rau on August 20th the company again proceeded to prepare the necessary machinery for the plaintiff, and shipped the same on August 24th, and that this machinery arrived on September 2d. On August 25th the plaintiff wrote to the company concel-

ing the order. Whether or not, therefore, the defendant used reasonable diligence in shipping the machinery, should have been left to the jury, under the instructions of the court. The court seems to have been of the opinion that, because the order read the machinery "to be shipped at once," the delay was unreasonable, as matter of law, but in this we think the court was in error. If the plaintiff required the machinery to be shipped at any particular time, that time should have been definitely specified in the order. No such time being specified, the defendant was only required to use reasonable diligence, in view of all the circumstances, to fill the order. In Brick-Press Co. v. Marshall, 5 S. D. 528, 59 N. W. 729, the contract provided that a certain brick machine contracted to be furnished to the defendant by the plaintiff should be shipped forthwith, but the machine was not in fact shipped for 60 days. The court, in discussing this question, says: "No time was fixed by the contract within which this should be done. Without such an agreement, the time would simply be a reasonable one—under some circumstances, and perhaps here, equivalent to forthwith. * * * Ordinarily the question of reasonableness or unreasonableness of the delay would have been a question for the jury." And such seems to be the general rule. There may be cases in which the court may say, as matter of law, that the delay was unreasonable, or, as matter of law, that it was reasonable; but this rule would only apply to very few cases—the question being in the absence of any definite fixed time, for the jury to say whether the delay was or was not unreasonable. We think, therefore, it was clearly error in this case to take this question from the jury and determine it as matter of law.

In any view of the case, we are of the opinion that the question of whether or not the agents were authorized to accept the old machinery before the order was accepted and the new machinery

ready for delivery, and also the questions as to whether or not the acts of Hess & Rau were ratified by the defendant, and as to whether or not the machinery was ready for delivery within a reasonable time, were all questions of fact for the jury to determine, and should have been left to them, under proper instructions from the court. The judgment of the court below is reversed, and a new trial ordered.