**UNIVERSAL MOTOR COMPANY,
Plaintiff and Appellant,**

v.

**Earle F. TUCKER, Defendant
and Respondent.**

**No. 7946.**

Supreme Court of North Dakota.

Aug. 9, 1961.

Rehearing Denied Sept. 28, 1961.

Conmy & Conmy, Bismarck, for plaintiff and appellant.

Cox, Pearce & Engebretson, Bismarck, for defendant and respondent.

MORRIS, Judge.

For several years prior to 1951 Earle F. Tucker owned 51 per cent of the capital stock of Universal Motor Company, and John R. Fleck owned 49 per cent. The company was an automotive agency dealing in Ford automobiles and trucks and in connection therewith conducted a general garage business. Blanche C. Fleck, wife of John R. Fleck, was an officer and director, having qualified by virtue of transfer of stock from her husband. In September 1951 the Flecks sold their stock to Milton Rue and he and members of his family became holders of 49 per cent of the capital stock of the corporation. For some years prior to the purchase of the Fleck interests by Rue, Tucker had been president and general manager of the corporation and as such had conducted its business. He had, by a resolution of the board of directors adopted at the beginning of each fiscal year, received a salary of $1,000 per month, with a bonus of $11,000 each year. The fiscal year of the corporation ended April 30. At the first meeting of the board of directors in which Rue participated, it was provided that Tucker would receive the salary and bonus for the fiscal year ending April 30, 1952 that had been authorized at the directors' meeting of May 16, 1951. On Decem-

ber 1, 1953, Rue wrote a letter to Tucker complaining about the management of the corporation and stating with respect to the bonus:

"Under bonus resolution, an actual net loss could result and manager would still receive more than $27,000.-00 annually; this hardly a matter of business prudence to authorize such salary plan. * * * I would suggest, in the book as written up where it states 'Directors' meeting, May 20, 1953, after Earle F. Tucker bonus,' add: Provided however that such bonus, either in whole or in part, shall not reduce the net earnings for the fiscal year to an amount less than $25,-000.00 before provisions for current year federal and state income taxes."

The minutes of the annual meeting of the board of directors held June 15, 1954 show the following resolution with respect to the salary and bonus of Mr. Tucker:

"Earle F. Tucker a monthly salary of $1,000.00 with a bonus of $11,000.00, the same as paid in the prior year to be paid at the end of the year when the funds are available, providing that the Net Profit, before Taxes, must be $25,000.00 or more—if not, an adjustment on bonus is in order."

The same provision appears in the minutes of the annual meetings of 1955, 1956 and 1957. No dividends were paid on stock during the years 1951 to 1957 inclusive.

In June 1957 Earle F. Tucker and his wife who had become a small holder of Tucker stock and secretary of the company sold their stock, with the exception of one share retained by Mr. Tucker, to Robert P. McCarney who became the purchaser of approximately 51 per cent of the stock of the corporation. The sale was on contract under which the voting rights passed to McCarney but Tucker retained title as security for an unpaid portion of the purchase price.

In September 1958 the plaintiff corporation brought this action for $33,000, money had and received by the defendant. The gist of this cause of action is that in the years 1955, 1956 and 1957 the net profit of the corporation was less than $25,000 each year before taxes and that the defendant improperly or mistakenly drew and received from the corporation the bonus of $11,000 in each of those years.

The complaint also contains a second cause of action for money had and received in the sum of $5,334.40, the gist of which is that during the fiscal years ending April 30, 1955, 1956 and 1957 the defendant caused the corporation to pay him $147.90 per month improperly labeled as expense items which were improperly withdrawn from the funds of the corporation by the defendant and which the corporation now demands be restored to it.

The defendant by answer specifically denies that he owes the plaintiff $33,000 or any sum whatsoever. He alleges that the sums referred to as bonus were paid to the defendant while employed by the plaintiff pursuant to a proper action of the board of directors and that the payments were ratified by the holders of all of the outstanding stock of the corporation and that the corporation is estopped from questioning or setting aside the actions of the corporation as ratified and approved by the stockholders. Defendant further alleges that during the years mentioned in the complaint the profits of the corporation exceeded the sum of $25,000 in each of the fiscal years concerned, and that no adjustment or change of the amount of the bonus was ever requested by the directors or stockholders.

With respect to the plaintiff's second cause of action, the defendant alleges that the sums of money to which the plaintiff refers were paid in reimbursement of the actual and agreed expenses of the defendant legitimately incurred on behalf of the corporation and that the reimbursement was

with the knowledge, approval and ratification of all of the directors and stockholders.

The first question to be resolved is the construction to be placed upon the bonus resolution that appears in the minutes of the annual directors' meeting for the years 1954, 1955, 1956 and 1957. We see no particular difficulty in determining the meaning. Prior to the change in the resolution as recorded in prior years, the bonus had been payable regardless of the amount of net profit, if any. After Mr. Rue's complaint the qualification was added, "providing that the Net Profit, before Taxes, must be $25,000.00 or more—if not, an adjustment on bonus is in order." This proviso definitely limited Tucker's right to receive a bonus of $11,000 to the existence of a net profit at the end of the year, before taxes, in the sum of $25,000 or more. If that profit was less than $25,000, Tucker was not entitled to the bonus. If the net profit was less than that sum, "an adjustment on bonus is in order." According to this resolution, if the net profit was less than $25,000 an agreement must be reached between Tucker and the board of directors before he would be entitled to any bonus whatsoever. The bonus, if any, was to be a matter of mutual agreement, since no formula was provided as a basis upon which the adjustment was to be made. In this case no adjustment was ever made. It does not appear that Tucker made any attempt to obtain an adjustment. Under the position that he takes in this case no adjustment was in order, for he contends that the net profit for each of the contested years was over $25,000. Thus under the position that he has taken he is entitled to $11,000 per year, nothing less. On the other hand the corporation takes the position that Tucker was not entitled to a bonus during any of the three years in question, and that the $33,000 which he has received in bonus payments must be returned to the corporation, with interest. This leads us to the question of the amount of the net profit before taxes for each of those years.

The trial court found that the corporation had two methods of determining net profit. One method was referred to throughout the testimony as resulting in an "unadjusted" statement, and the other as an "adjusted" statement, and the adjusted net profit was arrived at primarily by a reduction in the value of the used car and truck inventory and parts. The adjusted net profits for the years 1955, 1956 and 1957 were less than $25,000 for each of those years, while the unadjusted net profits exceeded $25,000 for each of those years. The court reached the conclusion that all of the stockholders' ratified the payments of bonus to Tucker and that the plaintiff corporation and its present stockholders are estopped from successfully asserting any claim for repayment of any portion of the bonus payments.

The court also determined with respect to the second cause of action that the payments of $147.90 per month were proper and legitimate disbursements to Tucker for expenses incurred on behalf of the corporation. Judgment was entered in favor of the defendant for the dismissal of both causes of action. The plaintiff appealed from the judgment and demanded a trial de novo.

With respect to the first cause of action, it appears that at the end of each year the bookkeeper for the corporation prepared a statement of the year's business which he labeled "ours" and which is described in this record as an "unadjusted" statement. Under the supervision of the office manager, who was directed and assisted by the general manager, Mr. Tucker, another statement was prepared which was the result of what is described as an adjustment. According to the unadjusted statement, the net profit of the corporation, before taxes, for each of the three years in question, was over $25,000, while according to the adjusted statement, the net profit for each of the same years was less than $25,000. A certified public accountant examined the books of the corporation and calculated the net profit before taxes and before payment

of the manager's bonus for each of the three years as follows:

| | | |
|---|---|---|
| April 30, 1955 | $21,734.03 |
| April 30, 1956 | $19,229.02 |
| April 30, 1957 | $11,726.01 |

These figures approximate those of the adjusted statements of the corporation.

The adjustment under consideration was made by revaluing assets of the corporation such as used cars and trucks, accessories, tires and parts, at the end of the year. The effect was to reduce the value of the property on hand and the inventories were adjusted accordingly. It was the practice to start the new fiscal year on the basis of these reduced values, but when the end of the new year was reached and the values of assets on hand were again adjusted downward, the reduction was not considered in determining the profits of the past year but was used as a basis for setting up the succeeding year's books. This practice was carried on throughout all of the years in question. Each year was begun with an adjusted or reduced valuation of assets, and at the end of the year, when there was again an adjustment or devaluation, that adjustment was not taken into consideration in determining the profits of the past year, but was used as the valuation for the beginning of the succeeding year. This practice, according to the testimony of the accountant, resulted in an overstatement of income for each year and in what is described in the record as the unadjusted statements. These statements show net profits for each of the years in question of over $30,000 and are the basis of the collection of the bonus payments by Tucker.

If the adjustment made at the end of each year had been shown as a part of the business of the year just ended, the net profits would have been reduced by the amount of the adjustment which was in fact a reduction of the value of the assets of the corporation. By ending the year without adjustment and starting the next year with a valuation of assets based on the adjusted figures and ending that year without adjustment, a loss in the value of assets which had actually occurred was not taken into consideration, with the result that the books showed annual profits erroneously inflated to the extent of the omitted adjustment.

■ The net profits referred to in the resolution we construe as meaning a real profit, not a mere book profit arrived at by an unrealistic system of bookkeeping in which the same assets of the corporation were shown to be of one value at the end of the year and of a much less value at the beginning of the next.

■ At this point we reach the determination that the unadjusted statements did not reflect true profit and the actual net profit of the plaintiff corporation for each year was less than $25,000. In the absence of a further agreement on the part of the board of directors, Tucker was not entitled to withdraw from the funds of the company the sum of $11,000 for any of the years in question, or any other sum.

Mr. Tucker contends that regardless of what if anything he was entitled to receive as a bonus, the bonus was in fact paid, the payment was ratified by the directors and stockholders, and that the corporation is estopped from compelling restoration.

During the years in question the stock of the corporation was either owned or entirely controlled by Tucker and Rue in the amounts of 51 per cent and 49 per cent. Tucker was president. He was also the manager of the business. According to the minutes of the annual directors' meetings, he received $4,200 per year as president, $12,000 per year as manager, and a bonus of $11,000 each year to which he was entitled only if the net profit was $25,000 or more before taxes. Rue received $4,000 per year as vice president and $100 per month as salary for additional services. He was not active in the management of the business. No dividends were declared. The

limitation with respect to the bonus was adopted at the request of Rue made in a letter to Tucker. Tucker testified that he intended to carry out Rue's suggestion. The limitation on the right to the bonus was inserted in the minutes of the annual meetings for 1954 and 1955 upon Rue's motions. In 1956 and 1957 similar motions were made by Tucker. During the years in question no meetings of the board of directors appear to have been held other than the annual meeting until June 13, 1957 when McCarney purchased Tucker's stock and succeeded him as a member of the board of directors. Despite this record which was made each year at the annual meeting, it is contended that because Rue knew that the bonus was paid to Tucker each year, the payments taking place after the annual meetings, Rue acquiesced in the payments, and that he and the corporation are estopped from recovering the bonus payments that were collected by Tucker contrary to the resolutions passed at the annual meetings. Rue admits that he knew that Tucker collected the bonus, but testified that he did not know that the profits were so small.

It appears that both the so-called adjusted and unadjusted statements were produced at the directors' meetings, and on one occasion Rue made some suggestions as to adjustments. Tucker testified that when Rue was looking over an adjusted statement, Tucker said:

"Mr. Rue, now you remember my bonus comes off there."

Rue replied,

"Yeah, I know that."

Tucker did not fix the time of this conversation or the business year to which it applied.

The directors' meetings were informal and curtailed affairs. The minutes of the annual meetings were abbreviated. Rue testified that he complained about the way the meetings were run and demanded that they be conducted in regular order and run in a businesslike manner. He did not examine the books of the company. He is not an accountant. The income tax returns were prepared by a certified public accountant.

Mr. Malmstad was the bookkeeper for the corporation and made up the unadjusted statement which he labeled "ours." A former office manager of the corporation testified that the procedure followed in making the adjustment was as follows:

"Our end-of-the-year statement was prepared by Mr. Malmstad, known as 'our' statement. And then after it was completed I waited for our parts inventory to be completed, and also the other inventories, tire inventory, used car inventory, and so forth. They were taken physically. And then after they had them turned over to me I reviewed them and checked with the department heads in regard to obsolescence on parts, tires, accessories, and also reviewed the cars, used cars and trucks, new cars and new trucks on hand, and prepared a temporary adjustment on the parts and accessories and tire inventories because I worked very closely with those fellows. And then after we'd arrived at a suitable figure I conversed with Mr. Tucker in regard to the proper entries of adjustment. And in regard to the used car inventory and used truck inventory, I always went up to him, had him review it. And one time I believe Mr. Rue was with us. We revalued the used car inventory. By that I mean we checked the cars and the trucks, used cars and trucks, and determined their value, and, of course, also taking into consideration whether they required repairs or not. We adjusted our inventories on that basis."

This is not a derivative action by stockholders to recover money paid out by the officers and directors of a corporation improperly or illegally. It is an action by the

corporation itself to recover money which it is contended was improperly and mistakenly withdrawn from the funds of the corporation by its former president and manager while he was in control of the affairs of the corporation. For the purposes of this action we may consider the corporation as owned by Mr. Tucker with a majority interest of 51 per cent of the stock, and Mr. Rue with a minority interest of 49 per cent of the stock. Tucker sold all of his stock except one share to McCarney in June, 1957. By this transaction McCarney became the owner of Tucker's stock and a majority stockholder. Rue and the members of his family whom he represented continued as the owners of the minority interest of 49 per cent.

 The defendant contends that the corporation is estopped from questioning or setting aside the payments of the bonus made to Tucker. McCarney, who acquired Tucker's stock, which is the only stock he owns, is not in a position to complain of Tucker's conduct while president and manager of the corporation. 13 Am.Jur., Corporations, Section 456. In other words, McCarney would be estopped from maintaining a derivative action to recover from Tucker. If all of the stockholders were estopped from maintaining such an action, the corporation itself could not maintain the action which would be for the benefit of the stockholders and recovery would be denied to the corporation on the ground of estoppel. Capitol Wine & Spirit Corporation v. Pokrass, 277 App.Div. 184, 98 N.Y.S.2d 291, 295. This rule, however, does not apply where only a majority of the stockholders are barred by estoppel.

"It is axiomatic that a minority cannot be allowed to be injured without their acquiescence by fraud or by other misconduct resulting in personal profit to officers, directors or others, even if such defalcation is approved by the majority, but it is otherwise if it is approved by all of the shareholders."

Capitol Wine & Spirit Corporation v. Pokrass, supra.

This brings us to the controlling point with respect to the recovery of the bonus payments. Is the minority stockholder, Rue, estopped by ratification or otherwise from challenging the legality of the bonus payments? If he is not estopped, then any estoppel applies only to the majority stockholders and the action can be maintained by the corporation.

The directors' meetings were informal and curtailed affairs. The minutes of the annual meetings of the board of directors are abbreviated. Rue had complained by letter to Tucker in December, 1953 of the manner in which the business was conducted, the lack of directors' meetings, and the provision for the payment of bonus without a limitation and regardless of what the net profit might be, and suggested in substance the limitation that was adopted at every annual directors' meeting thereafter. Tucker testified that he intended to comply with Rue's request. The net profits in each of the years 1955, 1956 and 1957 were less than $25,000 before taxes. Tucker made no attempt to secure a bonus in an adjusted amount, but following each annual meeting collected the bonus from the corporation as funds were available. During the three years in question no directors' meetings other than the annual meetings were held until in June, 1957 when McCarney, who had bought Tucker's stock, became president and director of the corporation. Later that year an accounting firm was employed to examine the books of the corporation, and on September 3, 1957 made a report pointing out that for the three years in question the net profits before taxes and before payment of the manager's bonus had been less than $25,000 each year. As Rue points out in his testimony, his participation in the affairs of the company was that of a minority stockholder who, although he attended the annual directors' meetings, was not an active participant in the management

and operation of the business, and although he knew that the bonus payments were made to Tucker, he did not know the profits were so small. Although he was a businessman and had attended directors' meetings of other corporations, he was not an accountant and there is no evidence to indicate that he was familiar with the accounting systems employed by the corporation. The method of accounting which is the basis of Tucker's claim to the bonus payments began each year with a reduced or adjusted inventory figure. The inventory was not reduced or adjusted at the end of that year when the profit was calculated, but the inventory figure was reduced or adjusted at the beginning of the following year which again ended with an unadjusted figure for the purposes of calculating the yearly net profit, and again the value of the inventory was reduced by an adjustment when the inventory values were set up for the following year. This the accountant testified was not proper accounting practice for determining the annual net profits of the corporation, but resulted in an unrealistic and inflated figure. We reach the determination that the bonus payments for the three years in question were unauthorized by and in violation of resolutions passed at the annual meetings.

■■ It is pleaded and contended by the defendant that the payments of the bonus were ratified by all of the directors and all of the stockholders, and that such ratification estops the corporation from recovering the bonus payments. As we have pointed out, the success of this defense depends upon ratification by Rue. Full knowledge, actual or imputed, of all material facts is an essential element of ratification. Pomeroy's Equity Jurisprudence, Fifth Edition, Volume 3, Section 964; Schull v. New Birdsall Co., 15 S.D. 8, 86 N.W. 654; Frank v. Wilson & Co., 27 Del.Ch. 292, 32 A.2d 277.

The record contains evidence of no affirmative act on the part of Rue either authorizing or ratifying the collection of the bonus payments by the defendant. While Rue knew that the bonus had been paid and did not protest the payment, we think it must be fairly inferred from the evidence that he did not know the actual net profits of the corporation were less than $25,000 and that the defendant was not entitled to the bonus. A circumstance strongly supporting that inference is that the limiting resolution was passed at each annual meeting and that it was originally proposed by Rue and acquiesced in by Tucker who stated that he intended to carry out the proposal. These facts, when considered in connection with Rue's inactivity in the business and the absence of directors' meetings other than the annual meetings, lead to the conclusion that the defense of ratification cannot be sustained and that the corporation is not estopped from recovery.

■ The plaintiff by its second cause of action seeks to recover from the defendant for 34 monthly payments of $147.90 each made by the corporation to the defendant during the three years in question as reimbursements for expenses. These sums were not itemized and the plaintiff contends they were illegal expenditures. The minutes of the annual directors' meetings provided that in addition to the salaries and bonus, "that Manager shall also be entitled to reimbursement for cost of travel and other promotional expenses in connection with the Company's business." The evidence shows that some years before Rue became a stockholder the expenses of the manager were calculated for the year 1947 and that year was used as a guide for estimating the expenses rather than filing them in itemized amounts. This practice was continued as long as Tucker remained manager. No one ever questioned or objected to that method of estimating and paying the manager's expenses. Tucker testified that they represented actual expenses paid out of his pocket on behalf of the company. The accountant testified that some expenses were paid in addition to the $147.90 per month. Tucker explains those items as being for unusual expenses on special occasions, such

as long trips on business for the company. The trial court found that the items for which reimbursement is claimed under the second cause of action were legitimate disbursements of the corporation and that the second cause of action should be dismissed. We agree with the trial court in this respect.

The judgment appealed from is reversed as to plaintiff's first cause of action and the district court is directed to enter judgment thereon as prayed for in plaintiff's complaint. The judgment insofar as it dismisses plaintiff's second cause of action is affirmed. The case is remanded to the district court for further proceedings conformable to this opinion.

SATHRE, C. J., and BURKE, TEIGEN and STRUTZ, JJ., concur.