AMERICAN & FOREIGN INSURANCE CO. v.
ALLIED PLUMBING & HEATING CO.

1. INSURANCE—BUILDER'S RISK INSURANCE—COMPLETION OF PROJECT —EVIDENCE—OCCUPANCY.

The fact that there is occupancy in an apartment building is merely supportive of a finding that the building was completed within the meaning of a builder's risk insurance policy covering the construction period; however, occupancy does not conclusively compel a finding of completion.

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5, 6] 43 Am Jur 2d, Insurance § 341.
  Builder's risk insurance policies.   94 ALR2d 221.
[4] 43 Am Jur 2d, Insurance § 470.
  Builder's risk insurance policies.   94 ALR2d 221.

2. Insurance—Builder's Risk Insurance—Completion of Project
—Occupancy—Substantial Use.

A building is ordinarily not completed within the meaning of a builder's risk insurance policy until the building is ready for the use or occupancy for which it was intended; "occupancy" does not occur until the building is put to a practical and substantial use for which it was designed.

3. Insurance—Builder's Risk Insurance—Completion of Project
—Occupancy.

A builder's risk insurance policy covering an apartment building while in the course of construction was still in effect even though a few of the apartments were being occupied where there was not such substantial occupancy as to amount to completion, because a building is not completed until it is put to the practical and substantial use for which it was designed.

4. Insurance—Building Construction—Insurable Interest—Contractor's Interest.

A contractor of a building under construction has an insurable interest in the building.

5. Insurance—Cancellation—Consent of Parties—Implied Cancellation.

A policy of insurance can be cancelled at any time before loss by agreement of the parties and such cancellation may be by the consent of the parties and may be either express or implied from the circumstances.

6. Insurance—Builder's Risk Insurance—Reporting Policy—Substitution of Policies.

A permanent policy of insurance covering an apartment building complex replaced a builder's risk policy as to one of the apartment buildings where the man who handled all the negotiations for the insurance policies for the apartment builders, the general contractor, and the subcontractor testified that it was his intention that the coverages of the builder's risk and the permanent policies not overlap, the builder's risk policy was a monthly reporting policy, the history of the parties' transactions shows that the value of a building was removed from the builder's risk policy at or prior to the addition of the value of that building to the list of buildings covered by the permanent policy, the value of the particular apartment building in question was removed from coverage under the builder's risk policy 20 days before the building was

destroyed by fire, and a representative of the apartment complex builders told the responsible insurance broker 5 days before the fire that the building should be added to the permanent policy, even though the building was not completed at the time of the fire.

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 October 6, 1971, at Grand Rapids. (Docket No. 9925.) Decided October 26, 1971. Leave to appeal denied, 387 Mich 753.

Complaint by American & Foreign Insurance Company, subrogee of Indian Hills Apartments, Inc., against Allied Plumbing & Heating Company and Badger Construction Company for recovery of insurance monies paid for an apartment building fire. Third-party complaint by Allied and Badger against London & Lancashire Insurance Company alleging that if they were liable, any judgment should be paid by London. Judgment for third-party plaintiffs. Third-party defendant appeals. Third-party plaintiffs cross-appeal. Reversed.

*Smith, Haughey, Rice, Roegge & Gould* (by *Lawrence P. Mulligan*), for defendant and third-party plaintiff Badger Construction Company.

*Cholette, Perkins & Buchanan* (by *Sherman H. Cone*), for defendant and third-party plaintiff Allied Plumbing & Heating Company.

*Allaben, Massie, Vander Weyden & Timmer* and *Schmidt, Smith & Howlett* (by *Richard L. Spindle*), for third-party defendant London & Lancashire Insurance Company.

Before: FITZGERALD, P. J., and BRONSON, and T. M. BURNS, JJ.

Fitzgerald, P. J. This cause arose from a fire in apartment building B of the Indian Hills Apartments in Grand Rapids on January 20, 1969. At the time of the fire, the building was still under construction.

On or about January 15, 1969, Mr. Jacobson, representing Indian Hills Apartments, told Mr. Dobie, his independent insurance broker, that building B was nearing completion and that it should be added to the "permanent" policy issued by American and Foreign Insurance Company. It had been insured under a builder's risk policy issued by London and Lancashire Insurance Company during construction.

After the fire, American settled the claim with Indian Hills, became its subrogee, and commenced action against Badger and Allied. Badger was the general building contractor for building B and Allied was its subcontractor. American alleged negligence on the part of Allied in starting the fire and negligence on the part of Badger in selecting its subcontractor.

Badger and Allied brought a third-party action against London alleging that if they were liable, any judgment should be paid by London under the builder's risk policy.

London denied coverage, and by stipulation, the third-party action was heard by the court, sitting without a jury. The trial court found that the builder's risk policy issued by London was in full force and effect as to the burned building. From that finding, London filed a claim of appeal on July 23, 1970. Badger and Allied filed claims of cross-appeal on August 6, 1970.

Although not noted in the briefs, the record indicates that the original suit has since gone to trial;

and a jury returned a verdict on February 3, 1971, in favor of American Insurance in the amount of $210,814.67 against Badger, and a verdict of no cause of action against Allied. Badger thereupon, on February 19, 1971, moved for a directed verdict or, in the alternative, a judgment notwithstanding the verdict; moved for a mistrial, moved for a new trial, and moved that judgment be entered against London and Lancashire Insurance Company. At the time of filing in this Court, the motions have not yet been heard by the trial court.

Despite the multitude of issues raised at trial and in this appeal, the crux of the question resolves itself to whether the London policy was in force as to building B at the time of the fire.

Appellant London's arguments with respect to the question of the completion of the building, the lack of an insurable interest on the part of Badger and Allied, and the "other insurance" provisions are without merit. The question of whether building B was completed within the meaning of the policy issued by London is an odd mixture of questions of law and fact. There is ample evidence in the record to support the finding that there was still a great deal of work to be done in building B before the building would be totally completed. While there was evidence that a few of the apartments in building B were already occupied, the fact that there is occupancy is merely supportive of a finding of, but does not conclusively compel a finding of, completion. See *Hendrix* v. *New Amsterdam Casualty Company* (CA 10, 1968), 390 F2d 299. Ordinarily a building is not "completed" until it is ready for the use or occupancy for which it was intended, and is not "occupied" until it is put to a practical and substantial use for which it was designed. See 94 ALR2d 221, § 10, pp 240–247.

In the instant case, there would not appear to be such substantial occupancy as to amount to "completion" as a matter of law. It would not appear that it can be said that the trial court's determination that the building was not "complete" within the meaning of the policy was clearly erroneous. Had London wished their coverage to terminate because of *any* occupancy, they should have used restrictive language to that effect rather than "while in the course of construction".

Appellant's contention that Badger and Allied lacked an insurable interest in building B at the time of the fire is equally without merit. A contractor of a building under construction has an insurable interest in the building. See 3 Couch on Insurance (2d ed), § 24:29, p 112; 94 ALR2d 221, § 6, pp 234–237; see, also, *Atlantic Insurance Company* v. *Massey* (CA 10, 1967), 381 F2d 520. It would not appear that the trial court was clearly erroneous in determining that Badger and Allied had an insurable interest in building B at the time of the fire, even though Badger and Allied did not suffer any immediate out-of-pocket expenses.

By the same token, the "other insurance" provision of the London policy is not applicable to the instant case, in that the American policy did not cover Badger's and Allied's interest and the American policy was not payable to Badger and Allied, who were named insureds under the London policy. Since the American policy did not cover the same insurable interests as the London policy, the "excess coverage" provisions do not apply. See *Lubetsky* v. *Standard Fire Insurance Company* (1922), 217 Mich 654; *McCoy* v. *Continental Insurance Company* (1949), 326 Mich 261; *Atlantic Insurance Company* v. *Massey, supra.*

The sole question of any merit is thus whether the trial court was clearly erroneous in determining that the London policy coverage was not terminated as to building B at the inception of coverage on the same building under the American policy.

In order to understand the issue at hand, it is necessary to first understand the nature of the London policy. The London policy is what is called a "monthly reporting policy". Under this type of policy, the insured (in this case, Badger) makes a monthly report of the amount of property at risk during the previous month, and the premium is determined accordingly.

The advantage of a "monthly reporting policy" is that, as coverage is no longer needed under the builder's risk policy, a lower declared value is reported by the insured which in turn results in a lower premium for the insured. (For a general discussion of the nature and operation of a "monthly reporting policy" see *Federal Intermediate Credit Bank of Baltimore* v. *Globe & Rutgers Fire Insurance Company* [D Md, 1934], 7 F Supp 56, 58, 59.)

The trial court, in its opinion from the bench, found that:

"[T]he L & L builders risk policy was not terminated or cancelled or revoked by substitution but remained in full force and effect until such time as it was finally terminated in October of 1969, and I do this on the basis that the building was not completed under the terms of the L & L policy."

It would appear from the above that the trial court misapprehended the nature and operation of a "reporting" type policy and failed to allow for the doctrine of termination by substitution. The court appears to have looked only to the termination language of the policy, which provides for termination

of coverage when: (1) the interest of the insured ceases, (2) the building is completed, or (3) the policy expires or is terminated.

While the London coverage was not terminated by reason of the termination provisions of the policy, it is well established that a policy of insurance can be cancelled at any time before loss by agreement of the parties. Such cancellation may be by the consent of the parties, and may be either express or implied from the circumstances. See 43 Am Jur 2d, Insurance, § 432, p 474.

In the instant case, Mr. Jacobson, who handled the negotiations for all the policies of Indian Hills, Badger, and Allied, testified that it was his intention that the coverages of the London builder's risk policy and the American "permanent" policy should not overlap. It was for this reason that the London builder's risk policy was a reporting policy, *i.e.*, so that the coverage could be removed from the London policy when coverage was added under the American policy.

A review of the reporting forms submitted by Badger to London shows the following declared values for the noted time periods:

| January 1968 | $2,600,000 |
| February 1968 | $2,600,000 |
| March 1968 | $2,600,000 |
| April 1968 | $2,600,000 |
| May 1968 | $2,600,000 |
| June 1968 | $2,390,000 |
| July 1968 | $2,180,000 |
| August 1968 | $1,570,000 |
| September 1968 | $1,570,000 |
| October 1968 | $1,170,000[1] |

---

[1] Although the reporting form states the October value as $1,700,000, apparently this was a mistake and it should have been $1,170,000. The premium was based upon $1,170,000.

| November 1968 | $1,170,000 |
| December 1968 | $1,170,000 |
| January 1969 | $ 770,000 |

A review of the American policy endorsements shows that the following buildings were added at the noted dates:

| July 21, 1968 | Townhouses #1 and #2 |
| August 21, 1968 | Apartment A |
| September 5, 1968 | Townhouse #3 |
| November 18, 1968 | Apartment E |
| January 15, 1969 | Apartment B |

Since each townhouse had a valued limit of $210,000 and each apartment had a valued limit of $400,000 under the London policy, it is clear, when the declared values under the London policy are correlated with the endorsements under the American policy, that in the case of each building, the value of that building was taken off the declared value of the property at risk under the London policy at the beginning of the month in which the building was added to the American policy or in the month prior to the month in which it was added to the American policy.

The expressed intent that the two coverages should not overlap, with the prior history of removing buildings from the London builder's risk coverage at or prior to the addition of a building under the American coverage, and the reduction of the declared value under the London policy by $400,000, effective January 1, 1969, clearly evidences the intent that the London coverage be terminated when the American coverage commenced on building B. This intention is even more obvious when it is realized that Badger did not submit the January 1969 declaration of value indicating the $400,000 reduc-

tion as of January 1, 1969, until after the building had burned.

This Court determines that the trial court erred in determining that the American policy was not substituted for the London policy, with regard to the coverage of building B, as of January 15, 1969.

Badger and Allied further contend that both American and London are members of the Royal-Globe group of insurance companies and since they operate out of the same office in Detroit, it was a breach of fiduciary duty for American to settle under its policy, whereby Badger and Allied would become subject to the subrogation action.

There is no merit in this issue. This Court determines that the coverage under the London policy was terminated by substitution as to building B. Thus, there cannot be said to be any breach of the fiduciary duty by settling under the American policy, since it would be the only available policy of insurance covering building B at the time of the fire.

This Court therefore reverses the decision of the lower court because the American policy was substituted for the London policy prior to the fire in building B on January 20, 1969. Therefore, London is exonerated from liability and the third-party cross-appeal by Allied and Badger is likewise decided in accordance with this decision.

Reversed. Costs to appellants.

All concurred.