Mike DOLAJAK and Dolajak Manufac-
turing and Ironworks, Inc., Plaintiffs,
Appellants, and Cross-Appellees,

v.

STATE AUTOMOBILE AND CASUALTY
UNDERWRITERS, a corporation, De-
fendant, Appellee, and Cross-Appellant.

Civ. No. 9286–A.

Supreme Court of North Dakota.

April 12, 1979.

Rehearing Denied April 24, 1979.

George T. Dynes, of Freed, Dynes, Malloy & Reichert, Dickinson, for plaintiffs, appellants, and cross-appellees.

Ward M. Kirby, of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant, appellee, and cross-appellant.

VANDE WALLE, Justice.

Mike Dolajak and Dolajak Manufacturing and Ironworks, Inc. ("Dolajak"), plaintiffs, appellants, and cross-appellees, appeal from a judgment in favor of them but for less than the amount they requested. The defendant, appellee, and cross-appellant, State Automobile and Casualty Underwriters ("State Auto"), cross-appeals from the judgment. We affirm the judgment of the trial court.

This is the second time the subject matter of this lawsuit has been before this court. A statement of facts is found in *Dolajak v. State Auto. & Cas. Underwriters*, 252 N.W.2d 180 (N.D.1977), wherein this court reversed a district court's summary judgment for State Auto, granted on the ground that Dolajak had been found negligent in a previous action brought against him in a Montana State court by the owners of a silo, Gary and Steven Bos ("Bos brothers").

A resume of the facts as set forth in this court's previous decision follows:

"The Dolajaks had contracted with Gary Bos and Steven Bos to erect a used silo for them in Montana.

"On 16 June 1972, when the silo was approximately 60 feet in the air and within a few hours of completion, a windstorm developed throwing the silo off its foundation and virtually destroying it. Thereafter, Dolajak returned to North Dakota and made no attempt or offer to assist in removal of the silo or to make specific arrangements for the erection of a second silo. Bos brought an action against Dolajak in Montana for damages. A jury trial resulted in a judgment of $17,626.74 against Dolajak in favor of Bos.

"The judgment was appealed to and affirmed by the Montana Supreme Court and is reported in *Bos v. Dolajak*, [167 Mont. 1,] 534 P.2d 1258 (1975). This case will be referred to later herein as the Montana case.

"In 1974, Dolajak brought an action in Stark County, North Dakota, against State Automobile and Casualty Underwriters to recover under the builders risk insurance policy the sum of $20,000.00 plus $3,000.00 for legal costs connected with the Montana litigation and attorney fees incurred as a result of this action.

"The insurance company, defendant and appellee, answered by generally denying the complaint and by alleging that the policy did not insure against

'A. Loss or damage directly or indirectly by faulty workmanship or faulty design or by the neglect of the assured to use all reasonable means to save and preserve the property at and after any disaster insured against.'

After some initial skirmishes on the grounds that the Montana case had not been completed, a motion for summary judgment was made by State Automobile and Casualty Underwriters which was denied on 6 January 1976. Several months later the motion was renewed and on 13 April 1976 the district judge granted a summary judgment in favor of State Automobile and Casualty Underwriters, a corporation, on the ground that the question of negligence had been considered by the Montana case and was now res judicata. Dolajak appealed to this court.

"The principal issue before us is whether or not the Montana case decided the issue of negligence so as to be res judicata." *Dolajak v. State Auto. & Cas. Underwriters, supra*, 252 N.W.2d at 181.

In the previous decision, this court held that because the Montana jury was instructed on both negligence and breach of contract and could have assessed damages based on either theory, but made no specific finding as to which theory it used, the issue of negligence was not res judicata for purposes of the action in North Dakota involving some of the same parties and similar facts.

Following remand by this court, the trial court determined that certain factual issues relating to Dolajak's alleged negligence and questions relating to value and damages would be submitted to a jury under special interrogatories, while questions of law relating to interpretation of the insurance contract would be determined by the trial court. The jury, in a special verdict, determined that Dolajak was not negligent in the construction of the silo for the Bos brothers and that the damages amounted to $29,500. The jury determinations are not challenged in this appeal.

The trial court, in its determination of the questions of law relating to interpretation of the insurance contract, issued the following findings of fact and conclusions of law:

"FINDINGS OF FACT

"I.

"The Plaintiff, Mike Dolajak, is an individual who is the primary stockholder and manager of the corporation known as Dolajak Manufacturing & Ironworks Inc., a North Dakota corporation. That said corporation is a Butler steel building contractor with headquarters at Dickinson, North Dakota, and was such a Butler building steel contractor for several years prior to the incident involved in this action.

"II.

"That the Defendant, State Automobile and Casualty Underwriters, a corporation, issued its policy ABC900–3539B which insured both of the Plaintiffs herein against various risks, including an inland marine-special risk form. The said policy was a renewal of similar policies issued in previous years and was effective September 4, 1971 to September 4, 1972. The inland marine-special coverage had been included in earlier policies as a result of negotiations for said coverage between representatives of the company and the Plaintiff, dating back to the policy made effective in Sep-

tember, 1967. Insurance coverage is afforded to the Plaintiff through the agent, William Wolff, doing business as Bill's Insurance, at Dickinson, North Dakota, included coverage written for Plaintiff with three different companies. In addition the Plaintiff carried other insurance coverages through the Liberty Insurance Agency at Dickinson, North Dakota.

## "III.

"That on June 16, 1972, the Plaintiff was in the process of erecting a Butler steel building for Gary Bos and Steven Bos of Belgrade, Montana; that at a time when said structure was within approximately one hour of completion, the same collapsed during a windstorm; that in accordance with special interrogatories submitted to the jury, the said jury determined that the collapse of such structure and loss or damage thereto did not directly or indirectly result from faulty workmanship, faulty design or the neglect of the insured to use reasonable means to save and preserve the property.

## "IV.

"That at the time of said loss the building was still under construction by the Plaintiffs and their employees who were actually working on the building when the windstorm came.

## "V.

"That under the inland marine-special coverage portion of the insurance policy, the named insured, Mike Dolajak, dba: Dolajak Manufacturing Company Inc. was insured to cover building material while in transit to the site of installation, being installed, or awaiting installation, and after installation until the interest of the insured ceased, to a limit of $20,000.00 on any one job site; that at no time had the Plaintiff been insured by Defendant under Inland Marine Builders Risk Multiple perils coverage.

## "VI.

"That by special interrogatories submitted to the jury, the jury determined that the reasonable market value of the silo immediately before it was damaged was $30,-000.00 and that the reasonable market value of the silo immediately after it was damaged was $500.00; that the cement base to the silo was not damaged in the incident and remained intact and was used by the Bos Brothers in reconstructing a silo on said location.

## "VII.

"The reasonable market value of all building materials that the Plaintiffs furnished and put into the silo base was $200.00 as determined by the jury. Said materials were incorporated in the concrete base and were not damaged.

## "VIII.

"The reasonable market value of all building materials that Gary Bos and Steven Bos furnished for the silo, as determined by the jury, was $15,000.00.

## "IX.

"That the Plaintiff, pursuant to contract with the Bos Brothers, furnished labor and services incorporated in the cement base of such silo and in the erection of said silo in accordance with a written contract, which are determined to have had a value at the time that the silo was destroyed totaling $6,500.00.

## "X.

"That the Plaintiff has received no payment for contributions made to the erection of said silo from the Bos Brothers or any other persons.

## "XI.

"That in accordance with the reporting requirements of the special coverage of inland marine insurance, Mike Dolajak, on or about May 10, 1972, reported the proposed erection of a silo for the Bos Brothers near

Belgrade, Montana, and included a valuation of a completed structure of $30,000.00. In making such report to the agent of Defendant, the Plaintiff did not inform the agent that all materials to be incorporated in the structure were to be furnished by Bos Brothers.

### "XII.

"That the silo which the Plaintiff was to erect for Bos Brothers, had been purchased by Bos Brothers from the Butler Steel Building Company in the State of California as a used structure, after which the Bos Brothers had the same dismantled and transported to their farm near Belgrade, Montana for re-erection.

### "XIII.

"The Plaintiff had maintained insurance coverage of various kinds with the Defendant company through agent Wolff for several years, including the special form inland marine coverage which had been carried and renewed continuously from as early as 1967. Plaintiff, Mike Dolajak, testified at the time of the trial, that some of the buildings which he had erected and reported under the special form coverage had been buildings obtained from other sources than the Butler Steel Building Company; however, the Defendant and its agents were never informed by Plaintiff of the fact that buildings erected and reported under the reporting requirements of the special form coverage were buildings obtained or owned by persons other than the Plaintiff.

### "XIV.

"The written agreement between Plaintiff and the Bos Brothers contains no mention of insurance coverage, and the evidence at time of trial indicated only that Mike Dolajak and one of the Bos Brothers had discussed insurance approximately five days before the silo collapsed and while the same was under construction. The evidence fails to show that the Plaintiff requested a policy endorsement to cover Gary and Steven Bos as named insureds under the policy, or that the Defendant or its agents were informed by Plaintiff that any coverage was to be afforded under the policy to the Bos Brothers.

### "XV.

"The loss which occurred on June 16, 1972, was reported by Mike Dolajak to the Defendant's agent, William Wolff, by telephone on June 16, 1972, and the agent in turn informed the Defendant of such loss at its claims office the following Monday, June 19, 1972. After an investigation of the claim, the Defendant did issue a letter of denial on July 24, 1972, declining any payment to the Plaintiffs under said policy for the reason that the silo to be erected was purchased and owned by Bos Brothers.

### "XVI.

"Although no written proof of loss was ever submitted by the Plaintiffs, none is required in this case since the Defendant, in issuing its letter of denial, acknowledged that a claim had been made and such denial constituted a waiver of any formal requirement of a written proof of loss.

### "XVII.

"That the Plaintiff, Mike Dolajak, admits that the Plaintiff after the collapse of the silo being erected for Bos Brothers, made no effort to return to reconstruct the silo, and that the Plaintiff was therefore guilty of a breach of contract; that the Bos Brothers ultimately instituted civil proceedings in Montana to recover judgment against the Plaintiff alleging that the collapse of said silo was due to negligence and breach of contract, as a result of which proceedings the Bos Brothers ultimately obtained a judgment against the Plaintiff herein; that the claims of Bos Brothers in Montana against the Plaintiff herein, were not based upon any coverages afforded to the Plaintiff herein under the special form of inland marine insurance coverage, or any other coverages under said policy, and therefore there is no basis for the allowance of a recovery against Defendant for the amount

of the judgment obtained against Plaintiff herein by the Bos Brothers in Montana, or for attorneys fees incurred by Plaintiff herein in the Montana Court civil proceedings.

"XVIII.

"That the Plaintiff herein furnished no materials which were damaged when the structure collapsed, the steel and wire mesh furnished by Plaintiff having been incorporated in the concrete base of the structure which was not damaged and the Plaintiff under the Inland Marine special coverage is therefore entitled to recover only the value of labor and services rendered pursuant to written agreement with the Bos Brothers for a completed structure totaling $6,500.00.

"From the foregoing Findings of Fact, the Court herewith makes the following:

"CONCLUSIONS OF LAW

"A. That on June 16, 1972, insurance policy No. ABC900–3539B issued by the Defendant and insuring the Plaintiffs for various insurance risks including inland marine-special form coverage was in force and effect.

"B. In accordance with the Plaintiff's contract of insurance and the Plaintiff's written agreement with the Bos Brothers, the silo being almost complete at the time of its collapse, the Plaintiff herein is entitled to recover the contractual value of labor and services rendered prior to the collapse of said structure, totaling $6,500.00, which is the limit of the Plaintiff's insurable interest, the loss insured not having resulted directly or [in]directly by faulty workmanship, faulty design, or neglect of the insured to use all reasonable means to save and preserve the property.

"C. That in addition, the Plaintiff is entitled to interest on the sum of

$6,500.00 at the rate of 4 percent per annum from and after July 24, 1972, to July 1, 1975 at the statutory rate of 4 percent per annum, and thereafter to date of payment at the rate of 6 percent per annum.

"D. That the Plaintiff is entitled to recover its statutory costs and disbursements herein."

Dolajak sets forth the following issues on his appeal:

"1. Was Dolajak's insurable interest limited to his own contribution of labor and materials or did he have an insurable interest in the entire building he was constructing, including materials obtained and furnished by the owner?

"2. Is Dolajak entitled to recover his legal costs in the Montana litigation because of the breach of contract by State Auto and its refusal to acknowledge coverage following the windstorm?"

State Auto for its cross-appeal sets forth the following issues:

"1. Is the Plaintiff entitled to recover damages in the amount found to be due by the Trial Court under the terms of the Inland Marine Special Coverage afforded by Defendant insurer?

"2. Is Plaintiff entitled to interest on such damages as are properly determined to be due, from July 24, 1972?

"3. Effect of admission of breach of contract by Dolajak?"

The insurance contract in issue provided Dolajak with a variety of coverages. The coverage pertinent to this case is in a standard contract form entitled "Inland Marine." The standard contract form contains a notation "See Special Form attached." [1] The "Special Form" consists of four pages and it is the provisions of this special form that govern the coverage at issue herein. It provides, in pertinent part:

"This policy covers:

1. The first page of the "Inland Marine" standard contract form contains the heading "Builders Risk Multiple Peril Policy." The provisions for "Builders Risk Multiple Peril Policy" indicate that it "Covers building materials while in transit or after arrival on the job site,

during construction or erection and until property is completed. Can be written for the perils desired by the client."

None of the blanks indicating coverage desired for perils is filed in.

"Building materials of every kind and description usual and incidental to the Insured's business as a Butler Steel Building Contractor only while in transit to the site of installation being installed or awaiting installation and after installation until the interest of the Insured ceases or this policy expires which first occurs."

The contract also contains an exclusion for loss or damage caused by the neglect of the insured to use all reasonable means to save and preserve the property at and after any disaster insured against. However, since the jury in its special verdict found Dolajak not guilty of any negligence, this provision is not pertinent to the issues before us.

To construe the insurance coverage provided by this contract properly, we must examine the terms of the agreement between Butler Manufacturing Company and Dolajak because the insurance contract between Dolajak and State Auto provides coverage for Dolajak's business as a Butler steel building contractor. The only evidence of that consists of a letter dated August 18, 1967, addressed to Dolajak by Butler Manufacturing Company and accepted by Dolajak.[2] The letter requires Dolajak

---

2.  [COPY]                                    BUTLER MANUFACTURING COMPANY
                                              7400 East 13th Street
    (Butler Trademark)                        Kansas City, Missouri 64126

                                                            August 18, 1967

Dolajak Manufacturing Company
Route #4
Dickinson, North Dakota

    Mr. Mike Dolajak

Gentlemen:

The purpose of this letter is to appoint your company a "Butler Agri-Builder" and to set forth our respective functions and responsibilities in the sale of products to you and their resale by you. As a Butler Agri-Builder, you will sell and erect certain products in accordance with the terms and conditions hereinafter specified.

The products covered by this agreement are those listed in Exhibit I which is attached hereto and made a part of this letter. The list of products included in Exhibit I may be changed by us, at our option, at any time that there are changes in products fabricated or distributed by us. These products shall be hereinafter called "Products."

You shall devote your best efforts, particularly in the "trade area", set out in Exhibit I, to the sale of the products and to the development of the sales potential of said products, in the following markets where said products are used:

In agricultural operations on the farm with the exception of buildings used on experimental and test farms built by industrial concerns normally serviced by the Buildings Division of Butler Manufacturing Company. (A farm is defined as a business engaged in the production of livestock, poultry or crops.)

Your relationship with us shall be that of an independent contractor, and you are not to act as an agent or employee of Butler Manufacturing Company and shall not at any time represent yourself as such. Accordingly, you cannot use or incorporate "Butler" and/or "Agri-Builder" in the firm name under which you do business unless you have received prior written approval, and it is understood that you will refrain from any use of these terms except in connection with the promotion, sale and erection of the products specified herein.

It is our sales policy to encourage you as the Butler Agri-Builder to resell Products to customers residing in or having purchasing headquarters in the trade area described in Exhibit I. Products sold by you to such customers may be shipped to and erected at any point in the United States. It is our general policy to sell Products to our Builders, but when in our opinion, circumstances indicate a departure from this policy, we may make sales either directly or in any other way that we may elect.

You shall purchase products from us for resale. The purchase price of such Products will be determined by our price lists which are in effect at the time of shipment less the standard discounts for each Product, which also are in effect at the time of shipment. We will furnish you with the price and discount lists for the products, and you will be

to "sell and erect certain products" in accordance with the terms of the contract. It further provides that Butler's general policy is "to sell Products to our Builders, but when in our opinion, circumstances indicate a departure from this policy, we may make sales either directly or in any other way that we may elect." It further requires Dolajak to "maintain an erection service for the Products which shall meet our standards and specifications, and facilities for the warehousing of Products."

Dolajak contends that the trial court erred in concluding that his insurable interest was limited to the amount of the contract between Dolajak and the Bos brothers, i. e., $6,500. He refers us to Section 26–02–06, N.D.C.C., which defines "insurable interest" as follows:

"Every interest in property, or any relation thereto, or liability in respect thereof, of such a nature that a contemplated peril might damnify directly the insured is an insurable interest, and may consist in:

"1. An existing interest;

"2. An inchoate interest founded on an existing interest; or

"3. An expectancy coupled with an existing interest in that out of which the expectancy arises."

He cites *Reishus v. Implement Dealers Mutual Insurance Co.*, 118 N.W.2d 673 (N.D. 1962), as supporting his contention that a contractor must be allowed to recover under a builder's risk policy for the value of property not owned by the insured. In that case, this court held:

"A person has an insurable interest in property by existence of which he will gain an advantage, or by the destruction of which he will suffer a loss, whether he has or has not any title in, or lien upon, or possession of the property. Section 26–02–06, N.D.C.C." Syllabus ¶ 5 by the Court, 118 N.W.2d at 674.

Dolajak concedes that there are distinctions to be made in the fact situations between *Reishus* and this case. However, we do not understand these factual distinctions

promptly informed of any changes in prices or discounts. You may cancel any order within ten days after notice of increase in prices or changes in discounts provided the order has been received by us prior to the notice of the increase. The terms of each sale to you shall be stated on the invoice.

You will maintain an erection service for the Products which shall meet our standards and specifications, and facilities for the warehousing of Products. You agree to maintain a sound financial relationship with us by meeting our credit terms. You will furnish financial reports periodically as established by the policies of our Credit Department. You will investigate and make reasonable efforts to handle all customer complaints.

This letter form of agreement shall continue until such time as you or we deem it necessary or advisable to terminate it. Such termination shall not be effective until at least thirty days' written notice shall have been given by the terminating party to the other.

All sales material, price lists, technical data and literature furnished you without charge is to be returned to us upon notice of termination, and you thereafter will refrain from making any further use of "Butler" and/or "Agri-Builder" and/or any other trademark or trade name of our Company.

We shall appreciate your indicating your agreement to the above terms and conditions by signing the duplicate copy of this letter and returning it to us.

Cordially yours,

BUTLER MANUFACTURING COMPANY

CRG rp

[Signed]
Charles R. Gardner
Agri-Products Division
Sales Manager

DOLAJAK MFG CO.
[Handwritten]
ACCEPTED: [Signed] MIKE DOLAJAK

By: _____

Date: ___8-28-67._____

to be pertinent to the issue before us. We agree with Dolajak that he could have an insurable interest in the silo.[3] The issue is not whether he *could have* had an insurable interest had he obtained the coverage but rather whether he *did have* an insurable interest covered by the policy of insurance issued by State Auto.

Because the trial court concluded that Dolajak was entitled to recover the contractual value of labor and services rendered prior to the collapse of the structure, totaling $6,500, "which is the limit of the Plaintiff's insurable interest," Dolajak apparently assumes the trial court found, as a matter of law, that he could not have an insurable interest under the contract with the Bos brothers. We do not so construe the holding of the trial court. At paragraph XIII of the findings of fact the trial court determined from Dolajak's testimony that some of the buildings he had erected and reported under the special form coverage had been buildings obtained from sources other than Butler. However, the trial court further determined that State Auto and its agents never were informed by Dolajak that buildings erected and reported under the reporting requirements of the special form coverage were buildings obtained or owned by persons other than Dolajak. Thus we do not construe paragraph B of the conclusions of law, which states that $6,500 is the limit of Dolajak's insurable interest, to mean that he could not have had an insurable interest under his contract with the Bos brothers and under the provisions of Section 26-02-06, N.D.C.C. Rather, we construe it to mean that he did not have an insurable interest in excess of $6,500 under the existing contract of insurance with State Auto. We do not find the trial court's decision contrary to the decision of this court in *Reishus, supra,* or the

other cases in Dolajak's brief that hold that a contractor may have an insurable interest in a building under construction or in the process of being remodeled regardless of whether the materials were furnished by the owner or whether the construction contract provides that the owner is to procure a policy insuring the building during the course of construction.[4] We conclude that the trial court properly construed the contract between Dolajak and State Auto.

Dolajak also urges that the contract of insurance is lengthy, confusing, and in several respects ambiguous and, because the insurance contract was prepared by State Auto and submitted to Dolajak, it must be construed liberally in favor of the insured (Dolajak) and against the insurer (State Auto). In support of this contention Dolajak cites *Mills v. Agrichemical Aviation, Inc.,* 250 N.W.2d 663 (N.D.1977), and *Williams v. Niesen,* 261 N.W.2d 401 (N.D.1977).

We agree that those decisions hold: that any ambiguity or reasonable doubt as to the meaning of an insurance policy is to be construed strictly against the insurer and in favor of the insured; that if language in a policy will support an interpretation which will impose liability on the insurer and one which will not, the former interpretation will be adopted; and that an insurance policy, as an adhesion contract drawn by the company, must be construed most strongly against the insurance company. Yet we cannot agree with Dolajak that those decisions are applicable to the insurance contract between him and State Auto. There is nothing in the policy to indicate that Dolajak was to be insured for materials that he did not own or furnish. The coverage applied to "Building materials of every kind and description usual and incidental to [Dolajak's] business as a Butler Steel Building Contractor . . . " Ma-

3. The agreement between Dolajak and the Bos brothers for erection of the silo for $6,500 contains no provision as to insurance coverage. Finding of fact No. XIV of the trial court in this regard, quoted above, is not disputed. In fact, Dolajak in his brief has stated that there are no factual disputes in this case, and we do not apply Rule 52(a), N.D.R.Civ.P.

4. Dolajak also cited in support of his contention: *Midwest Lumber Co. v. Dwight E. Nelson Construction Co.,* 188 Neb. 308, 196 N.W.2d 377 (1972); *American and Foreign Insurance Co. v. Allied Plumbing & Heating Co.,* 36 Mich. App. 561, 194 N.W.2d 158 (1971); *Homestead Fire Insurance Co. v. De Witt,* 206 Okl. 570, 245 P.2d 92 (1952).

terials not' owned or furnished by Dolajak were not "usual and incidental" to that business, at least within the knowledge of State Auto. Therefore, the language of the insurance policy is not ambiguous and supports only the interpretation we adopt herein.

Next, Dolajak argues that because, in accordance with the reporting requirements of the insurance policy, he reported the silo in question to the agent for State Auto, he paid premiums on the amount therein reported, and he had, over a period of years, paid premiums on buildings under erection in which he did not furnish all the materials, State Auto is estopped from denying coverage for the damaged silo. The trial court in paragraph XIII of its findings, however, determined that State Auto and its agents never were informed by Dolajak that buildings erected and reported under the reporting requirements of the "special form" coverage were buildings obtained or owned by persons other than Dolajak. This finding is not questioned, and, without knowledge on the part of State Auto or its agents of these facts, there can be no estoppel. See, e. g., *Peoples Bank and Trust v. Reiff*, 256 N.W.2d 336 (N.D.1977). Knowledge is essential whether the applicable doctrine is estoppel, waiver [*Dangerfield v. Markel*, 252 N.W.2d 184 (N.D.1977)], or ratification [*Universal Motor Co. v. Tucker*, 110 N.W.2d 497 (N.D.1961)].

Because we have concluded that the trial court was correct in finding that the claims of the Bos brothers in Montana against Dolajak were not based upon any coverage afforded to Dolajak under the insurance contract, we also necessarily conclude that the trial court was correct in finding that there was no basis for the allowance of a recovery against State Auto for the amount of the judgment obtained in the Montana litigation against Dolajak by the Bos brothers, or for attorney fees incurred by Dolajak in the Montana proceedings.

### STATE AUTO'S CROSS-APPEAL

State Auto's first issue is whether the trial court was correct in allowing $6,500 in damages to Dolajak. State Auto points out that, as determined by the special jury verdict, Dolajak had supplied only $200 worth of materials for the silo erection, all of which went into the concrete base for the silo which was not damaged in the windstorm. State Auto argues that because Dolajak had breached the contract by not erecting the silo, and because the policy of insurance does not cover breach of contract by the insured, Dolajak is not entitled to the award of $6,500 made by the trial court. State Auto urges, instead, that the sum of $3,000 would be the maximum award. It contends that because the contract between Dolajak and the Bos brothers provided that the sum Dolajak was to receive for completing the concrete work and erecting the silo was $6,500, $3,000 to be paid upon completion of the concrete work and $3,500 when the silo was finished, and because the concrete base was not damaged, $3,500 should be deducted from the award by the trial court.

We do not find State Auto's argument persuasive. The jury, in its special verdict, found that the damage was not due to the neglect of Dolajak. Therefore, the provision in paragraph 3(A) of the insurance contract excluding "Loss or damage directly or indirectly by faulty workmanship or faulty design or by the neglect of the assured to use all reasonable means to save and preserve the property at and after any disaster insured against" is not applicable. Paragraph 3(N)(4) of the policy, on the other hand, provides:

"Valuation:

This company shall not be liable beyond the actual cash value of the property insured at the time any loss or damage occurs *plus labor and other charges and/or expenses accured* [*sic*], but not exceeding the amount which it would cost to repair or replace the same with material of like kind and quality.

"In the event of a total or total constructive loss to a building completed, *the actual cash value shall include the insured's normal profit.*" [Emphasis added.]

We have no doubt that Dolajak's failure to complete the silo was caused by the windstorm, for which the insurance policy provided coverage to the extent of his materials and labor. The trial court found [paragraph IX of its findings of fact] that Dolajak furnished the labor and services incorporated in the concrete base of the silo and in the erection of the silo in accordance with his written contract with the Bos brothers, and that the value of such labor and services at the time the silo was destroyed totaled $6,500. We conclude that the terms of the insurance contract covered Dolajak's loss to that amount, and the coverage was not inapplicable because of Dolajak's breach of contract resulting from the damage by the windstorm.

State Auto's third issue is that the trial court erred in allowing interest on the $6,500 judgment awarded Dolajak because the insurer never was notified that Dolajak had made any commitment to insure materials owned by the Bos brothers. The trial court determined that no written proof of loss was ever submitted to State Auto but none was required because State Auto denied the claim by letter. State Auto contends, however, that under the evidence and the findings of the trial court, an insurer would not know the amount of the claim nor that the claim was in fact valid because Dolajak had demanded the full amount of the coverage, i. e., $20,000. State Auto argues that while furnishing proof of loss may dispense with the formal notice of loss, the giving of notice of loss does not dispense with the necessity of a formal proof of loss. State Auto's position is not persuasive. The letter of denial of July 20, 1972,[5] from State Auto to Mike Dolajak indicates several reasons for denying the claim, only one of which concerned the issue of an insurable interest. The other reasons given in the letter for denial of the claim were that it was due to an act of God and a breach of the standard care, custody, and control exclusion in the policy. Given those reasons for denial of the claim, it is apparent that State Auto would have denied the claim even if Dolajak had submitted written proof of loss indicating his interest in the silo that was insured under the policy. We conclude that the trial court, under this set of circumstances, did not err in determining that Dolajak was entitled to interest from and after July 24, 1972, the date that the trial court found the claim was denied in total by State Auto. Sec. 32–03–04, N.D. C.C.

The judgment of the trial court is affirmed.

ERICKSTAD, C. J., and SAND, PAULSON and PEDERSON, JJ., concur.

---

5. The trial court found that the letter of denial was issued July 24, 1972. The letter actually was dated July 20, 1972.