Richman, Appellant, *v.* Home Insurance Company of New York.

Argued October 13, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH and ROSS, JJ. (ARNOLD and GUNTHER, JJ., absent).

*Charles Polis,* with him *Philip S. Polis,* for appellant.

*Horace Michener Schell,* for appellee.

OPINION BY DITHRICH, J., January 20, 1953:

In this action in assumpsit based upon a water damage insurance policy, a jury returned a verdict in favor of defendant-insurer. This appeal is from the order of the court below overruling plaintiff's motions for judgment n.o.v. and a new trial.

The policy in question insured "against all DIRECT LOSS AND DAMAGE caused solely by the accidental discharge, leakage or overflow of WATER . . . from within the following source or sources: . . . [inter alia] RAIN or SNOW ADMITTED DIRECTLY to the INTERIOR of the BUILDING through DEFECTIVE ROOFS, LEADERS or SPOUTING, or by OPEN or DEFECTIVE DOORS, WINDOWS, SHOW WIN-

DOWS, SKYLIGHTS, TRANSOMS or VENTILA-TORS, except as herein provided . . ." But it specified that certain hazards were not covered, among them being "loss or damage caused directly or indirectly, (a) by seepage, leakage or influx of water through building walls, foundations, lowest basement floors, sidewalks or sidewalk lights; or (b) by floods, inundation, backing up of sewers or drains, or the influx of tide, rising or surface waters; . . ."

Plaintiff, who conducted a children's-wear business at 5701 Lebanon Avenue in the City of Philadelphia, produced evidence tending to show that a water damage loss she sustained, agreed by the parties to be $1150.45, was covered by the clause of the policy insuring against damage by rain. The defense was that the loss was occasioned by hazards not covered by the policy. Being an affirmative defense resting on exceptions or exclusions in the policy, the burden was cast upon defendant to establish it. *Armon v. Aetna Casualty and Surety Co.*, 369 Pa. 465, 87 A. 2d 302.

The jury found specially that the loss was not caused by rain being admitted directly to the interior through a defective door and open windows, as contended by plaintiff, but was caused directly or indirectly (1) by seepage through building walls, foundations and sidewalks and (2) by the influx of surface waters or the backing up of sewers and drains. The cause of the loss being a factual matter (cf. *Murphy v. Insurance Co. of North America*, 355 Pa. 442, 50 A. 2d 217), if the evidence, when viewed in the light most favorable to defendant, is sufficient to support the findings and verdict of the jury, we must hold that defendant has met the burden imposed upon it and that plaintiff cannot recover.

Appellant's shop is in the basement of a building, located at the northwest corner of the intersection of

57th Street, which runs north and south, and Lebanon Avenue, which runs east and west. A small lawn level with the public sidewalk separates the entrance to the shop and 57th Street. The floor of the shop is about five inches above the level of the lawn. The intersection is a low spot at the bottom of downward grades descending from all directions. The lowest point of the intersection, its southeast corner, is five inches lower than the northwest corner.

About 8:30 p.m. on August 9, 1947, there occurred a violent rainstorm, described as a cloudburst, which caused a flooding of the area in and about the intersection. A watermark on a pole indicated that the water at the southeast corner had been more than six and one-half feet deep. There was testimony that the water pushed out a large window of a barber shop located on that corner and came into the shop to a depth of four feet. There was also testimony that the water had been four feet deep at the northeast corner and, according to one witness, at the northwest corner the water was up to his chest. At a point higher in elevation than appellant's shop, being two houses north of it on the upward grade of 57th Street, the water rose two-thirds of the way up the back part of the seat of an automobile and covered three or four steps, each step having an eight-inch riser, leading from the sidewalk to a house in front of which the car was parked.

Upon entering her shop on the day following the storm appellant discovered that her merchandise had been damaged by water and found a watermark measuring 26 inches from the floor. Show cases had been splashed to the same height and the bottoms of dresses hanging from racks were wet for several inches.

While there is no direct evidence as to the source of the water which caused appellant's loss or as to how it entered the premises, the evidence and the in-

ferences reasonably deducible therefrom, when viewed in the light most favorable to appellee, support the jury's finding that the loss was caused by an influx of surface waters. Robert B. Ramsey, a civil engineer employed by the City of Philadelphia who specialized in drainage matters in the bureau of engineering and who, as stated in the opinion of the learned trial judge, "was familiar with the drainage problem at 57th and Lebanon Avenue," testified that in his opinion the accumulation of water was due to the inability of the sewers to carry the large amount of rainfall. We agree with the learned court below that "the evidence of the great accumulation of water in the immediate vicinity of plaintiff's property together with the testimony of Mr. Ramsey, the engineer, was clearly sufficient to enable the jury to infer that the damage was caused by the backing up of sewers or by the influx of surface waters, rather than by rain . . . admitted 'directly' to the interior of the building."

Appellant points out that the policy does not define the terms "rain" and "surface waters." She argues that since "There is no line of demarcation *in the policy* as to when rain water becomes surface water" an ambiguity exists which, according to the well-settled rule, should be resolved in favor of the insured.

In *Fenmode, Inc., v. Aetna Casualty & Surety Co.,* 303 Mich. 188, 6 N. W. 2d 479, it was held that accumulated waters which flowed under a defective door during a heavy rainstorm were surface waters within the meaning of a clause of a water damage policy similar to the one in the instant case. The Court there said (p. 192) : "An examination of the various definitions of surface waters collected in Thompson v. New Haven Water Co., 86 Conn. 597 (86 Atl. 585, 45 L. R. A. [N. S.] 457), shows that surface waters are commonly understood to be waters on the surface of the ground, usually

created by rain or snow, which are of a casual or vagrant character, following no definite course and having no substantial or permanent existence." See also Annotation in 4 A. L. R. 2d 532; *Nathanson v. Wagner,* 118 N. J. Eq. 390, 179 A. 466; *McCullough v. Hartpence,* 141 N. J. Eq. 499, 58 A. 2d 233; *San Gabriel Valley Country Club v. County of Los Angeles,* 182 Cal. 392, 188 Pac. 554.

In *Urse v. Maryland Casualty Co.,* 58 F. Supp. 897, a basement bowling alley was damaged by water which had seeped into a building from a pool that had collected outside it after a storm in the nature of a cloudburst. The Court held that the waters were surface waters as defined in the several authorities which it cited and discussed, and then, referring to the exclusion clause of the water damage policy involved, said (p. 900) : " . . . the loss in question is specifically and definitely excluded from coverage by the policy provision quoted above. The loss is excluded under (a) because caused 'by seepage, leaking or influx of water through building walls, foundations, lowest basement floors', etc.; and is likewise excluded under (b) because caused 'by floods, inundation, backing up of sewers, or drains, or influx of . . . surface waters; . . .' *These are clear words and are not susceptible of the slightest ambiguity."* (Emphasis added.)

The case was submitted to the jury under proper instructions. Its verdict is not against the law, the evidence, or the weight of the evidence and, therefore, will not be disturbed.

Judgment **affirmed.**