**NORTHSTAR STEEL, INC.,**
**Plaintiff-Appellant,**

v.

**AETNA INSURANCE COMPANY,**
**Defendant-Appellee.**

**Civ. No. 9055.**

Supreme Court of North Dakota.

Dec. 19, 1974.

McGee, Hankla, Backes & Wheeler, Minot, for plaintiff-appellant.

Farhart, Rasmuson, Olson & Lian, Minot, for defendant-appellee.

---

ERICKSTAD, Chief Justice.

In this case, the plaintiff, Northstar Steel, Inc., sought to recover damages in the sum of $4,218.16 alleged to have resulted from the action of ground water pressure which caused a concrete foundation wall to buckle and which raised a tank that had been placed underground with the intended use as a cistern, the water having accumulated following a heavy rainstorm.

Northstar contended that the defendant, Aetna Insurance Company, was indebted to it in the amount of the alleged damages because of the so-called builders risk insurance policy which Northstar had purchased from Aetna.

In its answer, Aetna denied liability asserting that it was not liable for "any loss caused by water damage, rain, water pressure or earth movement" relying upon the following language of the policy:

"5. THIS POLICY DOES NOT INSURE AGAINST LOSS OR DAMAGE CAUSED BY OR RESULTING FROM:

\* \* \* \* \* \*

"(i) Water damage caused by, contributed to or aggravated by any of the following: flood, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not (this exclusion does not apply to property in transit);

\* \* \* \* \* \*

"(m) Loss or damage to property in the open caused by rain, snow, or sleet (other than property in the custody of carriers for hire);

"(n) Loss to retaining walls not constituting part of a building when such loss is caused by landslide, water pressure or earth movement, unless such loss is caused by collapse of any other structure;" Aetna Insurance Company Policy Number IMF 94 96 25.

The trial court after due hearing concluded that the damage which occurred was "caused by or resulted from" rainfall and that accordingly it was excluded under paragraph 5(m) of the insurance policy.

The pertinent parts of the trial court's findings of fact read:

"II.

"That the Plaintiff had progressed with the construction of the Hart Motor Express Building to the following extent: that the foundation walls had been placed; that the thousand gallon cistern tank had been placed within said walls; that related plumbing had been placed and that gravel fill had been placed and compacted around said cistern and plumbing and within the foundation walls. Further, that the building was to be used as a loading dock facility and therefore said foundation was situated approximately 44 inches above the ground with portions of the retaining walls from one foot to three feet in the ground. The foundation was ready for a concrete floor to be poured on Thursday, but because of the hot weather this step was held up and a rain of 2 to 3 inches occurred on Sunday, September 2, 1973, before said pouring.

"III.

"That on September 2, 1973, insurance policy No. IMF 94 96 25, issued by the Defendant, Aetna Insurance Company, was in full force and effect at said time.

"IV.

"That during the evening of September 2, 1973, as a result of the two (2) to three (3) inches of rain which fell within the area of the foundation walls, a portion of the foundation wall, approximately 78 feet in length, was pushed outward approximately 24 inches. Also, as a result of said rainfall, the cistern tank had risen out of the ground approximately 24 inches and the related plumbing attached thereto was damaged.

**"V.**

"That the rain which fell accumulated in the retaining walls above the ground level which exerted a pressure that bulged the walls outward and further the rain fell along the side of the cistern causing a buoyancy effect and raising the cistern tank upward.

**"VI.**

"That if said rain had not fallen during said evening, no damage would have occurred; and that no damage was caused by or attributed to subsurface waters.

**"VII.**

"That the property damaged was out in the open.

**"VIII.**

"That paragraph 5 (M) of Defendant's insurance policy IMF 94 96 25 states as follows:

"This policy does not insure against loss or damage caused by or resulting from:

'(m) Loss or damage to property in the open caused by rain, snow, or sleet (other than property in the custody of carriers for hire);' "

It is from the judgment entered upon the basis of these findings dismissing the complaint which Northstar appeals.

It relies for coverage upon paragraphs numbered 1 and 4 of the policy:

**"1. THIS POLICY INSURES:**

Materials, fixtures, supplies and equipment (including temporary structures at installation site) being property of the Assured(s) or for which he (they) may be liable, intended for installation or erection in connection with the repair, completion, improvement or construction of property (all hereinafter referred to as 'construction') in the usual conduct of the assured's business.

\* \* \* \* \* \*

**"4. THIS POLICY INSURES (EXCEPT AS HEREINAFTER PROVIDED:)**

Against all risks of direct physical loss of or damage to the Insured Property from any external clause (including general average and salvage charges while waterborne)."

In meeting the contention that the damage resulted from the heavy rainfall, Northstar asserts that the rain, upon hitting the construction project, was no longer rain but water and that it was the pressure of the water contained within the four walls of the foundation for the building that caused the one wall to be pushed out and the cistern and the plumbing to be dislodged.

The facts are that at the time of the rainfall, Northstar had just completed the foundation walls, the concrete cistern had been placed in the ground, and the plumbing had been completed—all in preparation for the laying of the concrete floor. Gravel and clay had been placed on top of the ground between the foundation walls, and it was on top of this gravel that the concrete floor was to be poured.

Northstar informs us that Webster defines rain as "water falling in drops condensed from vapor in the atmosphere." We note that is the definition of rain under part 1(a) but that part 1(c) defines rain as "water that has fallen as rain." Webster's Third New International Dictionary, Unabridged, Copyright 1966.

Northstar contends that the policy is speaking about water in the form of rain, snow, and sleet under subsection (m); if within the form of a flood under (i); of water that has frozen in conjunction with plumbing under (k); and of water which has caused damage to retaining walls not part of a building under (n).

Northstar asserts that had Aetna intended to cover all damage caused by water, it would not have been necessary to enumerate specific types of damage such as con-

tained in subsections (i), (k), and (n). Its argument is perhaps best summarized in the latter part of its brief as follows:

"In the instant case, a heavy rainstorm occurred, the water accumulated within the foundation causing the damage complained of. It is our contention that once this rain water fell to the ground, it was no longer rain but rather would be better characterized as, first 'surface water' and then once it had entered the ground, 'subsurface water'. Because exclusion 5(m) does not exclude damage caused by subsurface water, the loss occasioned is covered by the insurance policy issued by the Defendant.

"For these reasons, we contend that the Court erred in its Findings of Fact VI. The Court correctly found in Paragraph V where it stated that the *rain which fell* accumulated . . . . But that finding should have stated 'that the water which fell in the form of rain'. It was water that did the damage and not rain. Nothing in 5(m) excludes water damage."

Aetna contends that water damage from rain includes the damage which results when the properties of water react with materials such as rusting, staining, or warping; that the properties of water include weight and hydrostatic pressure; and that the damage caused in the instant case resulted from the weight and hydrostatic pressure of the water which forced one of the foundation walls to push out and the cistern and plumbing to rise out of the gravel and clay.

Describing the construction as appearing like an open concrete box sitting above the ground, it asserts that pressure was exerted from within against the walls above the normal ground level as indicated by the fact that a wall was pushed outward rather than upward and concludes that the damage was from water which accumulated within the walls rather than from subsurface water.

Aetna argues that the trial court was correct in construing the language of the policy in its ordinary and popular sense and in concluding that the damage was caused by, or resulted from, the natural consequence of the pressure from the accumulation of rain water within the four walls.

It relies upon Section 9–07–09, N.D.C.C.:

"9–07–09. Words to be interpreted in ordinary sense.—The words of a contract are to be understood in their ordinary and popular sense rather than according to their strict legal meaning, unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." Section 9–07–09, N.D.C.C.

A rather technical distinction is made by Aetna between the water which accumulated and exerted pressure after falling on the gravel and clay and being enclosed between the walls in the instant case and water which falls to the ground in the form of rain and spreads out over the ground, doing damage as it flows over the ground.

We find little merit in that distinction, but we do conclude that the trial court was correct in its findings and in its conclusion that the complaint should be dismissed. Since the water accumulated as a natural consequence of the rain, and the accumulation of the water caused the pressure, and the pressure caused the damage to the property, the damage to the property is excluded under paragraph 5(m) as damage caused by rain.

Lest it be thought that we have not considered the cases relied upon by Northstar, we shall analyze the most pertinent of those cases at this time.

Richman v. Home Ins. Co. of N. Y., 172 Pa.Super.Ct. 383, 94 A.2d 164 (1953), is a case relied upon by Northstar.

In that case, the policy insured against all direct loss and damage caused solely by the accidental discharge, leakage or overflow of water from sources including rain or snow admitted directly to the interior of the building through defective roofs, leaders or spouting, or by open or defective doors,

windows, show windows, skylights, transoms or ventilators.

It excluded loss or damage caused directly or indirectly, (a) by seepage, leakage or influx of water through building walls, foundations, lowest basement floors, sidewalks or sidewalk lights; or (b) by floods, inundation, backing up of sewers or drains, or the influx of tide, and rising or surface waters.

The jury concluded that the loss was caused by an influx of surface waters and accordingly the case was dismissed because damage due to surface waters was excluded from coverage under the policy.

In affirming the verdict of the jury and the judgment of the trial court, the Superior Court of Pennsylvania held that the evidence was sufficient to enable the jury to infer that the damage was caused by the backing up of sewers or by the influx of surface waters rather than by rain "admitted directly to the interior of the building."

In that case, the policy covered damage from rain which was "admitted directly to the interior of the building" and specifically excluded damage caused by the backing up of sewers or the influx of surface waters, notwithstanding that the waters may have originated from a rain.

The instant case and *Richman* are clearly distinguishable on the differences in the terms of the policies.

In the instant case the term "rain" is not limited or otherwise circumscribed as it was in *Richman*, nor are surface waters or waters from the backing up of sewers specifically referred to as in *Richman*.

Poole v. Sun Underwriters Ins. Co. of New York, 65 S.D. 422, 274 N.W. 658 (1937), is also referred to us as supporting the contention that the damage which occurred in the instant case was covered by the policy.

In that case water damage was specifically covered, whereas damage caused by rain was specifically excluded. In *Poole*, about two and one half-inches of rain fell in less than two hours. Water which gathered on the streets to the approximate depth of two feet broke the basement windows of a garage in which the plaintiff kept his car and damage resulted. The trial court acting as both judge and jury found for the insured plaintiff.

On appeal, the Supreme Court affirmed the judgment saying:

"Respondent states that his automobile was damaged by water and that such damage was expressly provided for within the terms of the policy, as this particular peril was included among the other perils listed on the front page of the policy, as shown in the above quotations.

"It is apparent that the word 'rain' may be eliminated from consideration, as the undoubted intention in using the word 'rain' was to exclude damage to the car by direct contact with falling rain, and for illustration we might say in case of windows left open admitting rain which might do damage to the upholstery and interior of the car." Poole v. Sun Underwriters Ins. Co. of New York, 65 S.D. 422, 274 N.W. 658, at 659 (1937).

In *Poole*, the damage from the "surface water" comes within the term "water damage" which was specifically covered in the policy, as surface water is water. Accordingly, we do not disagree with the South Dakota court's conclusion that the damage from surface water was not excluded within the policy exclusion for damage resulting from rain.

In other words, *Poole* is also distinguishable from the instant case upon the basis of the difference in the terms of the respective policies.

We have read the other decisions referred to us by Northstar, but because we find them of little relevance we shall not discuss them.

For the reasons stated in this opinion, the judgment of the trial court is affirmed.

VOGEL, JOHNSON, PAULSON and KNUDSON, JJ., concur.