2002 ND 63

**WESTERN NATIONAL MUTUAL INSURANCE COMPANY, Plaintiff and Appellant**

v.

**UNIVERSITY OF NORTH DAKOTA, Defendant and Appellee.**

**No. 20010118.**

Supreme Court of North Dakota.

April 16, 2002.

5

**6**

Ronald H. McLean (argued) and Timothy G. Richard (appeared), Serkland Law Firm, Fargo, and James T. Martin (appeared), Gislason, Martin & Varpness, Edina, MN, for plaintiff and appellant.

Sara Gullickson McGrane, Special Assistant Attorney General, Felhaber Larson Fenlon Vogt, Minneapolis, MN, for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Western National Mutual Insurance Company ("Western National") appeals from a declaratory judgment awarding the University of North Dakota ("UND") $3,358,533.18, plus prejudgment interest, and costs and attorney fees for property damage in twenty-two buildings on UND's campus in April 1997. We hold N.D.C.C. §§ 26.1–32–01 and 26.1–32–03 codify the efficient proximate cause doctrine for determining insurance coverage for property damage where an excluded peril and a covered peril contribute to the damage. We also conclude an insurer may not contractually exclude coverage when a covered peril is the efficient proximate cause of damage, even though an excluded peril may have contributed to the damage. We affirm.

I

[¶ 2] In the spring of 1997, Grand Forks experienced record flooding of the Red River, which resulted in the river breaching protective dikes on April 18 and overflowing into the city. On April 19, the city of Grand Forks east of Interstate 29 and the UND campus were ordered evacuated. The twenty-two buildings in which UND claimed it incurred covered property damage were serviced by two sanitary sewer lift stations, lift station 12 and lift station 6, which were maintained by the city of Grand Forks. On April 20, city officials shut down lift station 12 and lift station 6. After those lift stations were shut down, water entered the UND buildings through the sewer system, causing extensive property damage to boiler and machinery equipment in the buildings.

[¶ 3]   In April 1997, UND had in force a Boiler and Machinery Policy issued by Western National, which provided coverage for "direct damage to Covered Property caused by a Covered Cause of Loss," but excluded coverage for "loss or damage caused directly or indirectly" by flood "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." UND claimed damage to boiler and machinery equipment in its buildings was caused by sewer backup, which was not specifically excluded from coverage under the Boiler and Machinery Policy. Western National denied coverage, claiming UND's property damage was excluded from coverage because it was caused "directly or indirectly" by flood "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

[¶ 4]   Western National brought this declaratory judgment action against UND, seeking resolution of the coverage issue. On cross-motions for summary judgment, the trial court decided Western National's policy excluded coverage for property damage caused by flood, but provided coverage for property damage caused by sewer backup. The court said the parties' claims raised a causation dispute and concluded N.D.C.C. §§ 26.1–32–01 and 26.1–32–03 set out the "efficient proximate cause" doctrine for resolving cases involving concurrent causes of property damage where one cause is a covered peril and the other cause is an excluded peril. The court decided there were disputed issues of material fact about whether sewer backup or the flood was the efficient proximate cause of UND's property damage. In a bifurcated trial, a jury decided the flood was not the efficient proximate cause of UND's property damage. In the second phase of trial, the jury awarded UND over $3.3 million, plus prejudgment interest from July 8, 1998, for the property dam-

age, but found Western National had not acted in bad faith. The trial court subsequently awarded UND costs and attorney fees and denied Western National's posttrial motions for judgment as a matter of law and for a new trial.

[¶ 5]   The trial court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 32–23–01 and 27–05–06. Western National's appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 32–23–07 and 28–27–01.

II

[¶ 6]   Western National argues its insurance policy with UND clearly and unambiguously excluded coverage for loss or damage caused "directly or indirectly" by flood "regardless of any other cause or event that contributes concurrently or in any sequence to the loss." Western National argues, as a matter of law, the April 1997 flood was the sole and direct cause of UND's property damage, because "the flood caused the City to shut down the sanitary sewer lift stations, which caused sewer backup, which caused the damage to UND's property." Western National argues the trial court erred in applying the efficient proximate cause doctrine rather than enforcing the concurrent cause language of the policy.

[¶ 7]   The interpretation of an insurance policy is a question of law, which is fully reviewable on appeal. *Center Mut. Ins. Co. v. Thompson*, 2000 ND 192, ¶ 14, 618 N.W.2d 505. We review a trial court's interpretation of an insurance policy by independently examining and construing the policy. *DeCoteau v. Nodak Mut. Ins. Co.*, 2000 ND 3, ¶ 19, 603 N.W.2d 906. In *Ziegelmann v. TMG Life Ins. Co.*, 2000 ND 55, ¶ 6, 607 N.W.2d 898 (citations omit-

ted), we outlined rules for construing an insurance policy:

> Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

Exclusions from coverage in an insurance policy must be clear and explicit, and are strictly construed against the insurer. *Fisher v. American Family Mut. Ins. Co.,* 1998 ND 109, ¶ 6, 579 N.W.2d 599, 602.

[¶ 8] Western National's policy with UND required Western National to pay for "direct damage to Covered Property caused by a Covered Cause of Loss," and defined "Covered Cause of Loss" as "an 'accident' to an 'object' shown in the Declarations." The policy defined "object" as boiler and machinery equipment in identified buildings on UND's campus and "accident" as "a sudden and accidental breakdown of the 'object' or part of the 'object' ... [which] manifest[s] itself by physical damage to the 'object' that necessitates repair or replacement." The policy ex-

cluded coverage for "loss or damage caused directly or indirectly by .... [flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not] regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

[¶ 9] Western National's policy did not explicitly define flood and did not explicitly exclude coverage for sewer backup. Although Western National's policy with UND was not an all-risk policy, Western National does not dispute the policy provided coverage for sewer backup. Rather, Western National relies on the language excluding coverage for property damage caused "directly or indirectly" by flood "regardless of any other cause or event that contributes concurrently or in any sequence to the loss."

[¶ 10] The plain, ordinary meaning of "flood" is "an overflowing of water on an area normally dry." Webster's New World Dictionary 535 (2nd Coll. Ed.1980). *See* Black's Law Dictionary 1640 (6th ed.1990) (defining flood as inundation of water over land not usually covered by it); 5 Appleman, *Insurance Law and Practice* § 3145, at pp. 462–63 (1970) (defining flood waters as waters above the highest line of the ordinary flow of a stream). Other courts have defined flood in accordance with that plain, ordinary meaning, and recognized flood water has a terranean nature for water overflowing its natural banks as opposed to water below the surface. *State Farm Lloyds v. Marchetti,* 962 S.W.2d 58, 61 (Tex.App.1997). *See also Kane v. Royal Ins. Co.,* 768 P.2d 678, 680–84 (Colo. 1989) (discussing ordinary meaning of flood); *State Farm Fire & Cas. Co. v. Paulson,* 756 P.2d 764, 769–71 (Wyo.1988) (discussing insurance cases defining flood). Insurance law generally recognizes sewer backup as a peril that is separate and

distinct from flood or surface water. *See Front Row Theatre v. American Mfr's. Mut.*, 18 F.3d 1343, 1346–47 (6th Cir.1994); *Old Dominion Ins. Co. v. Elysee, Inc.*, 601 So.2d 1243, 1244 (Fla.Dist.Ct.App.1992); *Pakmark Corp. v. Liberty Mut. Ins. Co.*, 943 S.W.2d 256, 261 (Mo.Ct.App.1997); *Marchetti*, at 60–61. Sewage is ordinarily defined as waste matter carried off by sewers or drains, and sewer means a pipe or drain, usually underground, used to carry off water and waste matter. Webster's New World Dictionary 1305 (2nd Coll. Ed.1980).

[¶ 11] Here, Western National agrees "it is undisputed that the water that entered many of the basements of UND's buildings backed up through the sanitary sewer system, [but] it also cannot be disputed that this water entered the sanitary sewage system directly because of the flooding of the Red River and English Coulee." Western National argues whether the water that caused UND's property damage was technically sewer backup rather than flood water was irrelevant, because the flood was the sole and direct cause of the damage. Contrary to Western National's argument, for purposes of determining excluded and covered perils, the manner in which the water entered UND's property is relevant because Western National's policy with UND excluded coverage for flood water but provided coverage for sewer backup. Although the 1997 flood may have been part of the chain of causation that contributed to UND's property damage, there was evidence the water that damaged UND's property backed up through the sewer system and contained sewage particulate. There was evidence no overland flooding entered any of the twenty-two buildings in which UND claimed property damage. UND's expert, Thomas Hanson, indicated UND's property damage was caused by the flow of sewage. There was also evi-

dence sewer backup could have occurred separately and independently of the flood and could have caused damage without the flood. Although the magnitude of water and circumstances of this case suggest the flood may have been part of the chain of causation for UND's property damage, the evidence does not, as a matter of law, require a conclusion the flood was the sole or direct cause of UND's property damage. We agree with the trial court there was a causation dispute about whether the flood, an excluded peril, or sewer backup, a covered peril, caused UND's property damage for purposes of determining coverage.

[¶ 12] Western National nevertheless argues the "concurrent cause" language of its policy with UND clearly and unambiguously excludes coverage for property damage caused directly or indirectly by flood regardless of any other cause or event that contributes concurrently or in any sequence to the loss. Our analysis of this argument requires an examination of the effect of the efficient proximate cause doctrine and N.D.C.C. §§ 26.1–32–01 and 26.1–32–03 on that policy language.

[¶ 13] Section 26.1–32–01, N.D.C.C., provides:

> An insurer is liable for a loss proximately caused by a peril insured against even though a peril not contemplated by the insurance contract may have been a remote cause of the loss. An insurer is not liable for a loss of which the peril insured against was only a remote cause.

Section 26.1–32–03, N.D.C.C., provides:

> When a peril is excepted specially in an insurance contract, a loss which would not have occurred but for that peril is excepted although the immediate cause of the loss was a peril which was not excepted.

The source notes for N.D.C.C. §§ 26.1–32–01 and 26.1–32–03 indicate those statutes were derived from N.D.C.C. §§ 26–06–01 and 26–06–03, which in turn indicate a derivation from Cal. Civ. C. §§ 2626 and 2628. Because many of our statutes share a common derivation from California, we have often said California decisions construing statutes similar to our statutes "'are entitled to respectful consideration, and may be "persuasive and should not be ignored."'" *Werlinger v. Mutual Serv. Cas. Ins. Co.*, 496 N.W.2d 26, 30 (N.D. 1993) (quoting *Glatt v. Bank of Kirkwood Plaza*, 383 N.W.2d 473, 476–77 n. 4 (N.D. 1986)).

[¶ 14] In *Sabella v. Wisler*, 59 Cal.2d 21, 27 Cal.Rptr. 689, 377 P.2d 889, 895 (1963), the California Supreme Court applied the efficient proximate cause doctrine to determine whether property damage was excluded from coverage where the damage was the result of a concurrence of an excluded peril, earth settling, and a covered peril, a ruptured sewer line. The court said "'the efficient cause—the one that sets others in motion—is the cause to which the loss is to be attributed, though the other causes may follow it, and operate more immediately in producing the disaster.'" *Id.* (quoting 6 Couch, *Insurance* § 1466 (1930)). The court rejected the insurer's arguments the insureds' damages would not have occurred "but for" the excluded peril and the insureds' damages were excluded from coverage under Section 532 of California's Insurance Code, the statutory provision from which N.D.C.C. § 26.1–32–03 is derived. *Sabella*, at 896–97. The court said:

> But section 532 must be read in conjunction with related section 530 of the Insurance Code and section 530 provides that "An insurer is liable for a loss of which a peril insured against was the proximate cause, although a peril not contemplated by the contract may have been a remote cause of the loss; but he is not liable for a loss of which the peril insured against was only a remote cause." It is thus apparent that if section 532 were construed in the manner contended for by defendant insurer, where an excepted peril operated to any extent in the chain of causation so that the resulting harm would not have occurred "but for" the excepted peril's operation, the insurer would be exempt even though an insured peril was the proximate cause of the loss. Such a result would be directly contrary to the provision in section 530, in accordance with the general rule, for liability of the insurer where the peril insured against proximately results in the loss.
>
> It would appear therefore that the specially excepted peril alluded to in section 532 as that "but for" which the loss would not have occurred, is the peril proximately causing the loss, and the peril there referred to as the "immediate cause of the loss" is that which is immediate in time to the occurrence of the damage. The latter conclusion as to the meaning of Section 532 of the Insurance Code suggests disapproval of language to the contrary in [prior caselaw] wherein the "but for" provision of section 532 was interpreted to refer to a cause without which the loss would not in fact have occurred, and without reference to companion section 530 of the Insurance Code.

*Sabella*, at 896–97 (citations omitted).

[¶ 15] In *Garvey v. State Farm Fire and Cas. Co.*, 48 Cal.3d 395, 257 Cal.Rptr. 292, 770 P.2d 704, 706–07 (1989), the California Supreme Court considered an issue about multiple causation in a case where an excluded peril, earth movement, and a covered peril, negligent construction, contributed to an insured's property damage. The court concluded coverage for a first

party claim should be determined under an efficient proximate cause analysis, and under the facts of that case, the determination of efficient proximate cause was a factual issue for the trier of fact:

> If the earth movement was the efficient proximate cause of the loss, then coverage would be denied under *Sabella.* On the other hand, if negligence was the efficient proximate cause of the loss, then coverage exists under *Sabella.* These issues were jury questions because sufficient evidence was introduced to support both possibilities.

*Garvey,* 257 Cal.Rptr. 292, 770 P.2d at 715 (citations omitted).

[¶ 16] In *Howell v. State Farm Fire and Cas. Co.,* 218 Cal.App.3d 1446, 267 Cal.Rptr. 708, 711 (1990), the California Court of Appeals held a property insurer may not contractually exclude coverage when a covered peril is the efficient proximate cause of a loss even though an excluded peril contributed directly, indirectly, concurrently, or in any sequence to the loss. The court said *Sabella* and Insurance Code §§ 530 and 532 imposed liability on a property insurer whenever a covered peril was the efficient proximate cause of the loss, regardless of other contributing causes. *Howell,* at 711. The court said:

> if we were to give full effect to the exclusion clauses contained in [the insurer's] policies "the insurer would be exempt even though an insured peril was the proximate cause of the loss. Such a result would be directly contrary to the provision in section 530, in accordance with the general rule, for liability of the insurer where the peril insured against proximately resulted in the loss . . . ." In short, the exclusion clauses are contrary to section 530, which provides that an insurer *"is liable* for a loss" proximately caused by a covered peril. Consequently, the exclusion clauses are not enforce-

able to the extent they purport to limit the insurer's liability beyond what is permitted by California law.

*Howell,* at 712–13 (citations omitted).

[¶ 17] The efficient proximate cause doctrine is generally recognized as the universal method for resolving coverage issues involving the concurrence of covered and excluded perils. *See* Mark D. Wuerfel and Mark Kopp, *"Efficient Proximate Causation" in the Context of Property Insurance Claims,* 65 Defense Counsel Journal 400 (1998). Although the efficient proximate cause doctrine fairly describes the analysis for property damage involving the concurrence of covered and excluded perils in the majority of American jurisdictions, recent changes in standard policy forms exclude certain perils from coverage if they are a cause of loss, regardless of any other perils acting "concurrently or any sequence with" them. *Id.* at 407. Under that language, some courts have held the parties are free to contract out of the efficient proximate cause doctrine. *See TNT Speed & Sport Ctr. Inc. v. American States Ins. Co.,* 114 F.3d 731, 733 (8th Cir.1997); *Front Row Theatre,* 18 F.3d at 1347; *Preferred Mut. Ins. Co. v. Travelers Cos.,* 955 F.Supp. 9, 11–13 (D.Mass.1997); *State Farm Fire and Cas. Co. v. Bongen,* 925 P.2d 1042, 1044–45 (Alaska 1996); *Millar v. State Farm Fire and Cas. Co.,* 167 Ariz. 93, 804 P.2d 822, 826 (Ariz.App.1990); *Kane,* 768 P.2d at 684–86; *Ramirez v. American Family Mut. Ins. Co.,* 652 N.E.2d 511, 515–16 (Ind.App.1995); *Pakmark,* 943 S.W.2d at 260–61; *Kula v. State Farm Fire and Cas. Co.,* 212 A.D.2d 16, 628 N.Y.S.2d 988, 991 (N.Y.App.Div.1995); *Alf v. State Farm Fire and Cas. Co.,* 850 P.2d 1272, 1275–78 (Utah 1993); *Paulson,* 756 P.2d at 772.

[¶ 18] In *Bongen,* 925 P.2d at 1044 n. 3, however, the Alaska Supreme Court recognized insurers of property in California are

statutorily required to provide coverage if the efficient proximate cause of a loss is an insured risk, but Alaska had no equivalent statutes that required application of the doctrine. *See also Kula,* 628 N.Y.S.2d at 991 (California has statutorily adopted the efficient proximate cause doctrine, but New York has not); *Alf,* 850 P.2d at 1277 (some states have judicially or statutorily adopted efficient proximate cause doctrine); *Safeco Ins. Co. v. Hirschmann,* 112 Wash.2d 621, 773 P.2d 413, 419–20 (1989) (Callow, C.J., dissenting) (California law based on specific regulatory statutes).

[¶ 19] Under California law, a property insurer may not contract out of the efficient proximate cause doctrine, and we reject Western National's assertion California's interpretation of its statutes was based on the reasonable expectation doctrine, an interpretative tool in the construction of insurance contracts that this Court has not adopted. *See Thompson,* 2000 ND 192, ¶¶ 11–12, 618 N.W.2d 505. Although *Garvey,* 257 Cal.Rptr. 292, 770 P.2d at 708, 711, mentioned the reasonable expectation doctrine, we are not persuaded the reasonable expectation doctrine provided the legal basis for the *Sabella* court's interpretation of the California statutes, or for the *Howell* court's conclusion that concurrent cause provisions were not enforceable to the extent those exclusionary provisions purported to limit an insurer's liability in a manner contrary to California law.

[¶ 20] In construing insurance policies, we have interpreted policies in light of relevant statutory provisions. *See Nodak Mut. Ins. Co. v. Heim,* 1997 ND 36, ¶ 21, 559 N.W.2d 846; *Milbank Mut. Ins. Co. v. Dairyland Ins. Co.,* 373 N.W.2d 888, 891 (N.D.1985); *Richard v. Fliflet,* 370 N.W.2d 528, 533 (N.D.1985); *Hughes v. State Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870, 883 (N.D.1975); *Bach v.*

*North Dakota Mut. Fire Ins. Co.,* 56 N.D. 319, 326–27, 217 N.W. 273, 275–76 (1928). We also construe exclusions from coverage strictly against the insurer. *Fisher,* 1998 ND 109, ¶ 6, 579 N.W.2d at 602. California's interpretation of statutory provisions similar to N.D.C.C. §§ 26.1–32–01 and 26.1–32–03 provides persuasive authority for construing and harmonizing our statutes. We conclude North Dakota has statutorily adopted the efficient proximate cause doctrine, and a property insurer may not contractually preclude coverage when the efficient proximate cause of a loss is a covered peril.

[¶ 21] Western National's reliance on *Northstar Steel, Inc. v. Aetna Ins. Co.,* 224 N.W.2d 805 (N.D.1974), *Strausbaugh v. Heritage Mut. Ins. Co.,* 1999 WL 33283346 (D.N.D.1999), and *Executive Corners Office Bldg. v. Maryland Ins. Co.,* 1999 WL 33283330 (D.N.D.1999), *aff'd without pub. opin.,* 221 F.3d 1342 (8th Cir.2000), is misplaced. Those cases all involved different exclusions, and no issues were raised in those cases about the efficient proximate cause doctrine or the application of N.D.C.C. §§ 26.1–32–01 and 26.1–32–03.

[¶ 22] In *Northstar,* 224 N.W.2d at 806–07, a policy excluded coverage for damage caused by rain, and the insured incurred property damage when rain accumulated within the walls of an uncovered concrete foundation at a construction site, pushing the foundation walls out and raising a cistern tank. This Court relied in part on the ordinary meaning of "rain" as water that has fallen as rain and affirmed the trial court's denial of coverage. *Id.* at 807–08. *Northstar* and cases cited therein affirmed trial court findings of fact, or a jury verdict, about causation, and no issue was raised about the "efficient proximate cause" doctrine, or the application of N.D.C.C. §§ 26.1–32–01 and 26.1–32–03.

[¶ 23] In *Executive Corners,* the insureds, Grand Forks business owners during the 1997 flood, suffered property damage from overland water that entered their premises and from sewer backup that accompanied the flood. The insureds claimed their policies afforded coverage for damage caused by the sewer backup that occurred prior to the damage caused by the overland water. The federal district court for North Dakota granted the insurer summary judgment, concluding concurrent cause language similar to this case unambiguously excluded coverage where damage was caused directly or indirectly by an excluded peril, flood water, even though the damage was also partially caused by a covered peril, sewer backup.

[¶ 24] In *Strausbaugh,* the insureds, Grand Forks residents, claimed property damage to their house during the 1997 flood. The insurer denied coverage under similar concurrent cause language that also excluded coverage for damages caused by sewer or drain backup and by seepage. The insureds argued the flood exclusion was not applicable because no overland flood water reached their house. The insureds claimed water damage in their basement was a result of seepage that their sump pump could not remove because the electricity had been turned off, and they sought coverage under language providing coverage for any damage caused by an accidental discharge or overflow in the plumbing system. The court decided coverage was unambiguously excluded under concurrent cause language, concluding a reasonable jury would be forced to conclude the insureds' damages were directly or indirectly caused by the flood. The court also said, assuming the insureds' sump pump was part of their plumbing system, the insureds admitted the water in their basement was the result of seepage, which was specifically excluded from coverage.

[¶ 25] Both *Executive Corners* and *Strausbaugh* are distinguishable because they involve different factual circumstances and different exclusions from coverage. More important, however, neither case addressed the efficient proximate cause doctrine and the application of N.D.C.C. §§ 26.1–32–01 and 26.1–32–03.

[¶ 26] We conclude the trial court did not err in construing Western National's insurance policy with UND to incorporate N.D.C.C. §§ 26.1–32–01 and 26.1–32–03 and the efficient proximate cause doctrine and in concluding the concurrent cause language was not enforceable to the extent it purported to exclude coverage in a manner contrary to those statutes.

[¶ 27] Western National argues, assuming the efficient proximate cause doctrine applies to this case, the evidence establishes the flood was the efficient proximate cause of UND's property damage.

[¶ 28] During the first phase of trial, the jury found the 1997 flood was not the efficient proximate cause of UND's property damage. The court instructed the jury:

The efficient proximate cause is a peril or risk that sets other causes in motion. It is not necessarily the last act in a chain of events, nor necessarily is it the triggering cause. To determine the efficient proximate cause you must look to the quality of the links and the chain of causation.

The efficient proximate cause is considered the predominating cause of the loss. By definition there can only be one efficient proximate cause; i.e., predominant cause of the loss.

It is for you the jury to find whether by a greater weight of the evidence

flooding of the Red River and its tributaries constituted the efficient proximate cause of the loss claimed by the University under its insurance policy with Western National.

[¶ 29] Under that instruction, Western National argues it was unreasonable to conclude anything other than the 1997 flood was the efficient proximate cause of UND's property damage. Western National argues it was beyond argument the flood was the triggering event of UND's damages and set all subsequent events in motion. Western National argues it was entitled to judgment as a matter of law under N.D.R.Civ.P. 50, or to a new trial under N.D.R.Civ.P. 59.

[¶ 30] A trial court's decision on a motion for judgment as a matter of law under N.D.R.Civ.P. 50 is based upon whether the evidence, when viewed in the light most favorable to the party against whom the motion is made, leads to but one conclusion as to the verdict about which there can be no reasonable difference of opinion. *Symington v. Mayo*, 1999 ND 48, ¶ 4, 590 N.W.2d 450. In considering a motion for judgment as a matter of law, a trial court must apply a rigorous standard with a view toward preserving a jury verdict. *Id.* In determining whether the evidence is sufficient to create an issue of fact, the court must view the evidence in the light most favorable to the non-moving party, and must accept the truth of the evidence presented by the non-moving party and the truth of all reasonable inferences from that evidence which supports the verdict. *Victory Park Apartments, Inc. v. Axelson*, 367 N.W.2d 155, 166 (N.D. 1985). The trial court's decision on a motion for judgment as a matter of law is fully reviewable on appeal. *Knoff v. American Crystal Sugar Co.*, 380 N.W.2d 313, 318 (N.D.1986).

[¶ 31] We review a trial court's denial of a N.D.R.Civ.P. 59 motion for new trial under the abuse-of-discretion standard. *Ali by Ali v. Dakota Clinic, Ltd.*, 1998 ND 145, ¶ 5, 582 N.W.2d 653. A trial court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law. *Schneider v. Schaaf*, 1999 ND 235, ¶ 12, 603 N.W.2d 869.

[¶ 32] The determination of efficient proximate cause is generally a factual question for the trier of fact. *Garvey*, 770 P.2d at 714–15. *See* 65 Defense Counsel Journal, at 402. The trial court instructed the jury the efficient proximate cause "is not necessarily the last act in the chain of events, nor necessarily is it the triggering cause," and the efficient proximate cause "look[s] to the quality of the links and the chain of causation" and "is considered the predominating cause of the loss."

[¶ 33] Here, there was evidence indicating the water that entered the twenty-two buildings at issue in this case contained sewage particulate and came through the sanitary sewer system. There was evidence the twenty-two buildings that received property damage in this case incurred no overland flooding. There was evidence sewer backup could have occurred separately and independently of the flood and could have caused damage without the flood. The evidence reflects the flood and sewer backup were both part of the chain of causation for UND's property damage. The magnitude of water involved in the backup indicates the flood may have been part of the chain of causation in this case, but does not, as a matter of law, require a conclusion the flood was the efficient proximate cause of UND's damage. There was evidence supporting the jury's

determination the flood was not the efficient proximate cause of UND's property damage. Under the circumstances of this case, we conclude Western National was not entitled to judgment as a matter of law on UND's claim for coverage, and the trial court did not abuse its discretion in denying Western National's motion for a new trial on this issue.

### III

[¶ 34] Western National argues the trial court erred in denying its motion for new trial based on UND's counsel's reference to reinsurance, the trial court's refusal to exclude UND's expert opinion testimony that Western claims was not disclosed during discovery, and the trial court's refusal to instruct the jury on proximate cause.

### A

[¶ 35] Western National argues UND's counsel's reference to reinsurance requires a new trial. During the second phase of the jury trial, UND's counsel asked a Western National representative, Aaron Toltzman, a question about reinsurance. The trial court sustained Western National's objection to the question and admonished the jury not to consider any references to reinsurance.

[¶ 36] In denying Western National's motion for a new trial based on UND's counsel's reference to reinsurance, the trial court stated:

The first ground claims that there was misconduct by the prevailing party by injecting the matter of reinsurance. In turn, Western National claims this created prejudice towards it, warranting a new trial. In support of this claim Western National cites *Ceartin v. Ochs*, 516 N.W.2d 651 (N.D.1994). This cited action involves a personal injury claim. In the *Ochs* trial, references to liability insurance coverage came into evidence in violation of N.D.R.Ev. 411. The circumstances of this case are quite different. In this case the entire jury panel as well as the impaneled jury was completely aware that this action involved an insurance company and dealt with the issue of insurance coverage. The description of the case contained in the opening instructions also explained that this entire case dealt with whether there was insurance coverage for the damages claimed by the defendant. By necessity and circumstances, references to insurance were made out in the open and before the jury from the beginning of the case. The brief reference made by University's counsel to reinsurance was contained in a question. This question was objected to and the objection was sustained. A cautionary instruction was provided to the jury by the court.

Considering the open role that insurance coverage had in this trial, the limited reference to reinsurance and the cautionary instruction given by this court to the jury, I conclude that the brief reference to reinsurance in front of the jury did not constitute misconduct and did not cause prejudice or harm to Western National that would warrant the granting of a new trial.

[¶ 37] Not all references to insurance require a new trial. *See Smith v. Anderson*, 451 N.W.2d 108 (N.D.1990). Here, the trial court carefully explained the reference to reinsurance did not warrant a new trial, because of the role of insurance in the trial and the court's cautionary instruction. The court's decision reflects a rational mental process leading to a reasoned decision, and under the circumstances of this case, we conclude the court did not abuse its discretion in denying Western National's motion for a new trial on this issue.

B

[¶ 38] Western National argues, during discovery, UND failed to disclose Thomas Hanson's expert opinion that if the lift stations had not been shut down, there would have been no sewer backup. Western National now argues the trial court erred in allowing Hanson to testify at trial regarding that opinion and abused its discretion in not granting a new trial on this issue.

[¶ 39] In denying Western National's motion for a new trial on this issue, the trial court concluded:

Western National claims that this court improperly allowed opinion testimony by witness Thomas Hanson relating to the effect of the shutdown of the sewer stations and water infiltration. On direct examination, this question was posed by the University. Essentially the question was (and the court is paraphrasing) "If the lift stations had not been shut down, would there have been sewer backup?" Western National objected. The grounds for the objection was simply "lack of foundation". No specification for Western National's objection beyond that was made. There certainly was no reference that the objection was grounded in failure to disclose this opinion at a prior time. Having considered the earlier testimony of this witness, including his expertise and his experience in the Grand Forks city sanitary sewer system and his involvement in the operations of that system during the flooding of the city of Grand Forks, I was satisfied that a sufficient evidentiary foundation existed to allow him to answer the question. The objection on the grounds of insufficient foundation is a general objection, and not a specific one. *Gateway Bank v. Department of Banking,* 192 Neb. 109, 219 N.W.2d 211 (1974). An objection to the admission of evidence must

be specific enough to alert the trial court to legal questions or problems raised and enable the opposing counsel to take any possible corrective action to remedy the defect. *In the Interest of S.J.M.,* 539 N.W.2d 496 (Iowa App.1995). A general objection as to foundation to a question requesting an opinion of a witness is not adequately specific to alert the trial court to rule on whether a prior opinion has been disclosed. *See Bernadt v. Suburban Air, Inc.,* 221 Neb. 537, 378 N.W.2d 852 (1985); *See also Daniels v. Bloomquist,* 258 Iowa 301, 138 N.W.2d 868 (Iowa 1965); *Thompson v. Bohlken,* 312 N.W.2d 501 (Iowa 1981). If it was Western National's intention in its objection to alert this court to the failure of the University to provide a prior disclosure of an opinion, it did not adequately do so by the general objection of "lack of foundation". Consequently, the University was entitled to receive an answer to this question.

Under these circumstances this court is not satisfied that these grounds as represented by Western National are sufficient to constitute a basis for granting a new trial.

[¶ 40] Under N.D.R.Ev. 103(a), an objection to the introduction of evidence must state the specific ground of objection, if the specific ground is not apparent from the context. *See State v. Helgeson,* 303 N.W.2d 342, 346 (N.D.1981). We agree with the trial court that Western National's general objection to a lack of foundation did not specifically raise the issue about the disclosure of Hanson's opinion. Moreover, UND disclosed Hanson as an expert who would "testify as to the sewer system and sewer backup." In his deposition, Hanson testified that once the lift stations were shut down, backup of sanitary sewage was certain to occur. We conclude Western National had adequate

notice of Hanson's opinion, and the trial court did not abuse its discretion in denying Western National's motion for a new trial on this issue.

### C

[¶ 41] Western National argues the trial court erred in refusing to instruct the jury on proximate cause.

[¶ 42] Jury instructions must fairly and adequately inform the jury of the law. *Huber v. Oliver Cty.*, 1999 ND 220, ¶ 10, 602 N.W.2d 710. A trial court is not required to instruct the jury in the exact language sought by a party if the court's instructions adequately and correctly inform the jury of the applicable law. *Id.*

[¶ 43] The trial court instructed the jury on efficient proximate cause, and Western National has not cited any authority requiring an additional instruction on proximate cause. The court's instruction on efficient proximate cause fairly and adequately informed the jury of the law, and we believe any further instructions on proximate cause in the first phase of the trial would have been surplusage. We conclude the trial court did not abuse its discretion in refusing to grant a new trial on this issue.

### IV

[¶ 44] Western National argues, as a matter of law, UND was not entitled to recover prejudgment interest under N.D.C.C. § 32-02-04. The jury awarded UND pre-judgment interest from July 8, 1998. Western National argues UND was not entitled to prejudgment interest, because UND had not determined the amount of its loss at that time and did not do so until trial.

[¶ 45] Under N.D.C.C. § 32-03-04, a party is entitled to interest on damages for a breach of contract if the damages are certain, or capable of being made certain, by calculation on a specific day. In *Metcalf v. Security Int'l Ins. Co.*, 261 N.W.2d 795, 802-03 (N.D.1977), this Court said if a claim for breach of contract is uncertain, unliquidated, and disputed, prejudgment interest should not be awarded; however, the fact the sum owed is disputed does not, by itself, render the claim uncertain or unliquidated so as to preclude interest under N.D.C.C. § 32-03-04. In *Metcalf*, at 803, this Court awarded interest to the claimant, concluding an amount owed was "certain" under N.D.C.C. § 32-03-04, because it was ascertainable by calculation under the proper construction of the contract.

[¶ 46] In *Dolajak v. State Auto. & Cas. Underwriters*, 278 N.W.2d 373, 383 (N.D. 1979), an insurer gave several reasons for denying a claim, including that the insured did not have an insurable interest in the property. Later, the insurer asserted it did not know the amount of the claim or its validity because the insured had demanded the full amount of coverage. *Id.* This Court affirmed an award of prejudgment interest, concluding "[g]iven those reasons for [the insurer's] denial of the claim, it is apparent that [the insurer] would have denied the claim even if [the insured] had submitted written proof of loss indicating his interest in the [property] that was insured under the policy." *Id.*

[¶ 47] Here, Western National denied coverage on the ground UND's property damage was excluded from coverage under the flood exclusion. Because Western National claimed coverage was excluded under the flood exclusion, it is apparent Western National would have denied UND's claim regardless of when UND determined the exact amount of its loss. We conclude UND's claim was certain under *Metcalf* and N.D.C.C. § 32-03-04 because

it was ascertainable by calculation under the proper construction of the policy, and UND was entitled to prejudgment interest under the rationale of *Dolajak.*

V

[¶ 48] Western National argues the trial court erred in awarding UND attorney fees. Western National argues its policy requires it to pay attorney fees only for suits it is called to defend, i.e., third-party actions. Western National argues it was not called upon to defend a "suit," rather it began a declaratory judgment action to determine the rights and liabilities of the parties.

[¶ 49] Absent statutory or contractual authority, the American Rule generally assumes each party to a lawsuit bears its own attorney fees. *Ehrman v. Feist,* 1997 ND 180, ¶ 18, 568 N.W.2d 747. This Court has allowed an insured to recover attorney fees in litigation to resolve insurance coverage disputes. *See Johnson v. Center Mut. Ins. Co.,* 529 N.W.2d 568, 571–72 (N.D.1995); *State Farm Fire and Cas. Co. v. Sigman,* 508 N.W.2d 323, 325–27 (N.D. 1993).

[¶ 50] In *Sigman,* 508 N.W.2d at 324, an insurer brought a declaratory judgment action against its insured for a determination of coverage. A majority of this Court construed language in the insurance policy requiring the insurer to pay reasonable expenses the insured incurred at the insurer's request as obligating the insurer to pay the insured's attorney fees incurred in the insured's declaratory judgment action. *Id.* at 325. This Court also said the award of attorney fees was proper under N.D.C.C. § 32–23–08, which provides "[f]urther relief based on a declaratory judgment or decree may be granted whenever necessary or proper." *Sigman,* at 327. This Court said:

"Litigation between an insurance company and its insured to determine coverage presents a unique situation. The insured pays premiums to receive protection, not a lawsuit from its insurer. When the insured gets that policy protection only by court order after litigating coverage, it is both 'necessary' and 'proper' to award attorney fees and costs to give the insured the full benefit of his insurance contract. . . . If an insured is not awarded attorney fees as supplemental relief, he is effectively denied the benefit he bargained for in the insurance policy."

*Sigman,* at 326–27.

[¶ 51] We have declined to apply *Sigman* when there is no coverage under an insurance policy. *See Hanneman v. Continental West. Ins. Co.,* 1998 ND 46, ¶ 47, 575 N.W.2d 445; *State Farm Mut. Auto. Ins. Co. v. Estate of Gabel,* 539 N.W.2d 290, 294 (N.D.1995). The Legislature has not amended N.D.C.C. § 32–23–08 since this Court's 1993 decision in *Sigman,* and the Legislature's acquiescence and failure to amend the statute is evidence the *Sigman* interpretation of that statute is in accordance with legislative intent. *See Clarys v. Ford Motor Co.,* 1999 ND 72, ¶ 16, 592 N.W.2d 573; *Krehlik v. Moore,* 542 N.W.2d 443, 446 (N.D.1996).

[¶ 52] Here, the proceedings in the trial court established Western National's policy provided coverage for UND's property damage. We conclude the court's award of attorney fees was appropriate under N.D.C.C. § 32–23–08 and *Sigman.* Western National has not challenged the amount of attorney fees awarded to UND, and we therefore affirm the award of attorney fees.

VI

[¶ 53] We affirm the judgment.

[¶ 54]   VANDE WALLE, C.J., NEUMANN, MARING, and KAPSNER, JJ., concur.